*United States v. Benjamin A. Carpenter* – 3:21-cr-038-KAC-DCP
Part II— Supplemental Statement of the Reasons for Detention

In consideration of releasing the Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the arguments and exhibits presented at the detention hearing, as well as the Amended Pretrial Services Report ("PSR") compiled by the United States Probation Office, establishes by clear and convincing evidence that the Defendant is a danger to the community, and by a preponderance of the evidence, a risk of non-appearance, for the reasons set forth below.

Pursuant to the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, a defendant may be detained pending trial only when a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The default position of the law that a defendant should be released pending trial is modified for certain defendants considered "particularly dangerous." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). If probable cause exists to believe that a defendant committed one of the crimes listed in 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption in favor of detention. A grand jury indictment alone will satisfy the probable cause requirement. *See United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

Section 3142(e)(3) imposes a "burden of production" on the defendant, while the Government retains the ultimate "burden of persuasion." *Stone*, 608 F.3d at 945. While a defendant's burden of production is not heavy, the defendant must come forward with some evidence to suggest he poses neither a risk of flight nor a danger to the community. *Id.* (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Satisfying this burden of production is insufficient to overcome fully the presumption in favor of detention; instead, the presumption remains a factor to be weighed by the district court. *Id.*

Here, Defendant is charged in the Indictment [Doc. 3] with the attempted provision of material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). This is a "Federal crime of terrorism," which the Bail Reform Act specifically compels the courts to take into account when assessing detention issues. 18 U.S.C. § 3142(g)(1). This charge creates a rebuttable presumption that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

To overcome the initial presumption, Defendant tendered his mother as a proposed third-party custodian, who testified that she would ensure Defendant abided by the terms of any imposed release conditions, and Defendant proffered that he was on the no-fly list, which would restrict air and sea travel, as well as that the FBI had seized his passport. While Defendant has overcome the relatively low threshold imposed by the burden of production, after considering the factors of 18 U.S.C. § 3142(g)(1), the Court finds that the Government has adequately satisfied its burden of persuasion to warrant his pretrial detention. *See, e.g.*, *United States v. Hefner*, No. 3:18-cr-136, 2019 WL 612704, at *2 (E.D. Tenn. Feb. 13, 2019) ("The burden of production is 'not heavy,' and the defendant satisfies the burden simply by introducing 'some evidence' in rebuttal.") (quoting

*Stone*, 608 F.3d at 945) (additional internal citations omitted); *United States v. Fei Guo Tang*, No. 319-CR-014-GFVT-MAS, 2019 WL 2453655, at *3 (E.D. Ky. June 12, 2019) ("Although Mr. Tang has overcome the low rebuttal threshold necessary to overcome the presumption of dangerousness and risk of flight, the Court finds the Government has adequately satisfied its burden of persuasion to warrant his pretrial detention.").

First, the Court considers the nature and circumstances of the charged offense, which clearly weigh in favor of detention. 18 U.S.C. § 3142(g)(1). As discussed, the statute specifically directs the Court to consider whether the charged offense involves a "Federal crime of terrorism." 18 U.S.C. § 3142(g)(1). During the hearing, the Government proffered that the crime charged carries a maximum term of imprisonment of twenty years, as well as argued that due to a terrorism enhancement, Defendant faces a base offense level of 38 under the Sentencing Guidelines, and thus is likely to face a full twenty-year sentence if convicted.

Defendant is charged with attempting to provide material support and resources to the Islamic State of Iraq and al-Sham ("ISIS"). The Redacted Affidavit in Support of an Application for a Search Warrant of Defendant's residence, introduced as Exhibit 2 to the hearing, alleges that Defendant is the leader of Ahlut-Tawhid Publications ("ATP"), an international organization responsible for the transcription and publication of pro-ISIS media in English. Defendant is known as "Abu Hamza" in his communications with ATP members.

During the hearing, the Government proffered that a FBI Online Covert Employee ("OCE") was able to gain access to a Telegram group message—an encrypted messaging service application that promotes itself as protecting users from governmental data requests—with Defendant and several ATP members. The FBI OCE represented to Defendant that she/he maintained connections with the "Diwan"—ISIS's centralized organization that distributes media internationally—and that ISIS had requested ATP's assistance in providing English translations. The FBI OCE requested Defendant's assistance in transcribing a video entitled "Bleeding Campaigns," a twenty-five minute video that documents ISIS's military operations against Egyptian troops, including ISIS fighters engaging in battle, executing a suicide bombing, and capturing and executing three individuals. *See* [Exh. 2]. Defendant subsequently agreed to assist, and aided by other ATP members, provided a complete English transcript of the video while believing that this transcription would be used by ISIS.

Second, the weight of the evidence of Defendant's dangerousness weighs in favor of detention. 18 U.S.C. § 3142(g)(2). In *Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. At the hearing, the Government proffered that Defendant had a leadership role in ATP, an organization with international members that engaged in the transcription and publication of pro-ISIS media publications. Moreover, the Government proffered that Defendant was in communication with several individuals arrested on terrorism-related charges both in the United States and internationally, as well as that investigations into several of these individuals referenced Abu-Hamza. *See* [Exhs. 10–14]. Additionally, Defendant was in regular communication on the intercepted Telegram group

2

message with Mohamad Ameen, a known recruiter and key leader for ISIS in Syria, Afghanistan, and the Maldives. [Exh. 11]. The Government also introduced as Exhibits 3, 4, and 5 several pro-ISIS newsletters published by ATP. [SEALED Exhs. 3–5].

More significantly, however, the Government introduced exhibits establishing Defendant's communications with an ATP member who was incarcerated in an Australian prison for terrorism offenses, as well as messages about how to communicate with this individual in contravention of the Australian "control order," similar to conditions of supervised release. [SEALED Exhs. 8–9]. Defendant also communicated with ATP members about his acknowledged status of being on the "no-fly list," and discussed his ability to travel to Mexico to evade this restriction. [SEALED Exh. 7].[1] The Court finds that Defendant's large network of international contacts, communications expertise, specific communications referencing a disregard for imposed conditions of release, use of encrypted messaging platforms, as well as support for an extremely violent international terrorist organization establish by a preponderance of the evidence that Defendant poses a severe flight risk. Although Defendant claims that his passport has been seized, his communications establish a demonstrated knowledge of the potential ability to circumvent the no-fly list, and thus, impermissibly travel internationally.

Next, the Court must consider a host of factors in regard to the history and characteristics of Defendant, which factors the Court also finds weigh in favor of detention. 18 U.S.C. § 3142(g)(3)(A). The Court notes that Defendant has family ties to the Eastern District of Tennessee through his mother—the proposed third-party custodian. However, Defendant is not significantly employed, as his mother testified at the detention hearing that he previously worked, at most, ten hours per week. The PSR details that Defendant reported no history of mental health issues, as well as advised that he previously was a heavy smoker of marijuana but ceased use approximately nine years ago.

Next, in considering these factors, the Court may also consider both actual convictions and mere arrests or charges to assess the Defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). Defendant has a minimal criminal history, although his probation was revoked after a conviction of a charge of possession of drug paraphernalia in Knox County Sessions Court on December 15, 2008.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." While Defendant has a minimal criminal history, as stated above, the Court finds the rationale in *United States v. Hir* applicable, where the Ninth Circuit noted that "[a]lthough each case requires a fact-specific inquiry into the potential danger posed by the individual defendant . . . at least two district courts reached similar conclusions [that the defendant poses a risk of danger to the community] in cases in which defendants with no criminal history and strong

---

[1] While the Court has cited to several sealed exhibits, the referenced information from these exhibits was discussed during the open detention hearing and is available in the unredacted portion of the transcript.

community ties were accused of crimes involving terrorism." 517 F.3d 1081, 1091 n.8 (9th Cir. 2008) (citing *United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1355–57 (M.D. Fla. 2003); *United States v. Goba*, 240 F. Supp. 2d 242, 257–58 (W.D.N.Y. 2003)). Defendant has attempted to engage in assisting an extremely violent international terrorist organization and has demonstrated his history of support through his communications and personal documents.

Defendant proposes to reside with his mother, on house arrest with electronic monitoring, without any Internet access. However, the Court finds that there is no "failsafe way to prevent any and all exposure" to Internet-capable devices, particularly in light of the Government's proffer that Defendant previously utilized his mother's work computer without her knowledge. *See United States v. Fei Guo Tang*, No. 3:19-CR-014-GFVT-MAS, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019). Further, Defendant resided with his mother when he was alleged to have committed the instant offenses, and she testified at the hearing that she was aware that Defendant spent a significant amount of time on the Internet, communicated with an Australian prisoner, and was referred to as Abu Hamza. The Court does not find that any proposed conditions will be sufficient to limit the risk of danger and risk of flight due to Defendant's sophisticated knowledge of encrypted messaging applications and statements indicating an intent/ability to circumvent the no-fly list or an Australian "control order" of release.

Moreover, Defendant presents a grave danger to both the local and international communities due to his association and ability to communicate with pro-ISIS individuals throughout the world. The Government correctly states that Defendant presents the risk of continuing to promote pro-ISIS propaganda, but more significantly, alert other ATP members about the specific details of his arrest and law enforcement's investigation. The United States Probation Office has recommended that Defendant be detained largely due to the nature of the instant offense, risk of flight, and safety concerns for the community, among other factors.

Consequently, the Court finds that the evidence and information provided at the hearing established by a preponderance of the evidence that Defendant is a risk of flight, as well as that by clear and convincing evidence that Defendant poses a serious risk of danger to the community or another person. The Court finds that no condition or combination of conditions will reasonably assure the safety of individuals of the community if Defendant were released on bond or ensure Defendant's appearance at trial. Therefore, Defendant shall be detained pending trial.