IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,              )
                                       )
                Plaintiff,             )
                                       )
v.                                     )
                                       )        No.   3:21-CR-38-KAC-DCP
BENJAMIN ALAN CARPENTER,               )
                                       )
                Defendant.             )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or recommendation as appropriate. This case is before the undersigned on Defendant Benjamin Carpenter's three motions to dismiss the Indictment. Defendant argues that the single charge against him must be dismissed because the Indictment fails to provide constitutionally sufficient notice [Doc. 40] and the statute is unconstitutionally vague and overbroad as applied to him [Doc. 58]. Defendant also asserts that the Indictment should be dismissed because he was entrapped as a matter of law [Doc. 63]. The Government responds in opposition [Docs. 43, 58, & 81], stating the Indictment gives Defendant notice that he is charged with attempting to assist ISIS through provision of "translation services" and the statute is constitutionally sound. Moreover, it contends that the issue of entrapment must be left to the jury because the undisputed evidence does not affirmatively show Defendant was not predisposed to commit the charged crime.

After careful review of the parties' briefs and arguments along with the relevant statutes and case law, the Court finds that the Superseding Indictment provides sufficient notice of the charged offense and the statute is neither vague, nor overly broad as applied to Defendant

Carpenter. The Court also finds that the issue of entrapment may not be determined pretrial because it turns on disputed facts. Accordingly, the undersigned respectfully recommends that Defendant's motions to dismiss the Indictment be denied.

## I.  BACKGROUND

On March 23, 2022, the Grand Jury charged that from January 30, 2021, to February 14, 2021, Defendant Carpenter knowingly attempted to provide "'material support and resources,'" as defined in 18 U.S.C. § 2339A(b), to the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization, to include "among other things, services" all while knowing that ISIS is a foreign terrorist organization that has engaged in terrorism, in violation of 18 U.S.C. § 2339B(a)(1) [Doc. 3]. In a Superseding Indictment, issued on April 6, 2022, the Grand Jury charged that during the same time period, Defendant "knowingly attempted to provide material support and resources," as defined in 18 U.S.C. § 2339A(b), "namely services, to wit, translation services" to ISIS, which he knew to be a foreign terrorist organization engaged in terrorism, in violation of 18 U.S.C. § 2339B(a)(1) [Doc. 73]. The Superseding Indictment omits the language "among other things," and limits the material support and resources to "services" and specifically, "translation services."

The parties appeared before the undersigned on March 31, 2022, for a hearing on the pending motions. Assistant United States Attorney Casey T. Arrowood appeared on behalf of the Government. Defendant Benjamin Carpenter represented himself[1] with the assistance of elbow counsel Attorney Wade V. Davies. Shortly after the motion hearing, the Superseding Indictment

---

[1]     Following a hearing on August 11, 2021, the Court found Defendant Carpenter knowingly and voluntarily waived his right to counsel and permitted Defendant to represent himself [Doc. 38]. The Court appointed elbow counsel to assist Defendant [*Id.*] and subsequently substituted Attorney Davies as elbow counsel [Doc. 53]. As of June 15, 2022, the Court granted Defendant's request to have Mr. Davies proceed as counsel of record and represent him through the remainder of this case [Doc. 87].

2

was filed [Doc. 73].  The Court granted Defendant's request to allow the parties to file supplemental briefs relating to the changes to the charge in the Superseding Indictment [Doc. 78]. Defendant filed a supplemental brief on May 6, 2022 [Doc. 80].  The Government filed a responding brief on May 23, 2022 [Doc. 81], and Defendant filed a reply brief on May 31, 2022 [Doc. 83].  Thereafter, the Court took the motions under advisement.

## II. ANALYSIS

Defendant asks the Court to dismiss the charged offense for three primary reasons.  He argues the Superseding Indictment fails to give constitutionally sufficient notice.  He also contends that the charged statute, 18 U.S.C. § 2339B(a)(1), is unconstitutionally vague and overly broad as applied to him.  Finally, he asserts that the undisputed facts reveal he was entrapped as a matter of law.  The Court examines each of these issues in turn.

### A. Notice

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, . . . ; nor shall any person be subject for the same offense to be twice put in jeopardy[.]"  U.S. Const. amend. V.  "In all criminal prosecutions, the accused shall enjoy the right . . .  to be informed of the nature and cause of the accusation[.]"  U.S. Const. amend. VI.  An indictment shall include "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)); *see also United States v. Howard,* 947 F.3d 936, 947 (6th Cir. 2020) (observing that the indictment

must state all of the elements of the offense and sufficient facts to allow the accused to raise a double jeopardy defense to a subsequent charge for "the same crime based on the same facts" (internal quotation omitted)). The Court observes that it must use "'a common sense construction'" to determine whether the indictment gives Defendant Carpenter fair notice of the charges. *United States v. Maney,* 226 F.3d 660, 663 (6th Cir. 2000) (quoting *Allen v. United States,* 867 F.2d 969, 971 (6th Cir. 1989)).

Defendant argues that the charge fails to provide notice because it does not allege the specific facts against which he must defend. He argues that the definition of "service" in 18 U.S.C. § 2339A(b) includes a multitude of activities. Defendant maintains that because the Indictment fails to specify which of the fourteen types of "service" he is alleged to have provided, he cannot prepare his defense or plead a bar to a future prosecution. Additionally, he argues that the general nature of the charge prevents the Court from assessing whether the charged facts are sufficient to support a conviction.

Section 2339A(b)(1) defines the term "material support or resources" as

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1).[2] Relying on *United States v. Awan*, Defendant contends the charge is insufficient because it fails to state which of the various types of service he allegedly performed.

---

[2]    Defendant is charged with a violation of 18 U.S.C. § 2339B(a), which prohibits the knowing provision or attempted provision of "material support or resources to a foreign terrorist organization." A violation of this statute requires the defendant to "have knowledge that the organization is a designated terrorist organization . . . , that the organization has engaged or engages in terrorist activity . . . , or that the organization has engaged or engages in acts of terrorism[.]" 18

459 F. Supp. 2d 167, 175–76 (E.D.N.Y. 2006), *aff'd*, 384 F. App'x 9 (2d Cir. 2010).  He argues that neither discovery, nor a bill of particulars can cure the constitutional defect in the Indictment because neither reveal what the Grand Jury found to be the charged offense.  *See id.* at 175.

Defendant denies that the Superseding Indictment, which removed the phrase "among other things" and specified that the alleged services were "translation services," cures the "fatal flaw" in the charge [Doc. 80].  He argues that "translation services" is not among the types of services enumerated in § 2339A(b)(1), which defines "material support and resources," and, thus, the Superseding Indictment still fails to provide constitutionally sufficient notice.  He asserts that if the Grand Jury had been properly informed that only the specific property or services listed in § 2339A(b)(1) constitute "material support and resources" and of the definitions of "personnel" and "expert advice or assistance," "it's very unlikely that any indictment would [have] be[en] returned" [Doc. 80 p. 4].

The Court finds the Superseding Indictment provides constitutionally adequate notice of the offense charged to permit the Defendant to prepare his defense and to challenge a future double jeopardy violation.  Both parties appear to agree that the Superseding Indictment states all the elements of a violation of § 2339B(a)(1).  Additionally, the Superseding Indictment specifies a fifteen-day period in which the alleged crime was committed, names the foreign terrorist organization as ISIS, and states the material support that Defendant allegedly provided was "translation services."  Defendant argues that translation services cannot constitute material support under the definition in § 2339(A), because it is not one of the fourteen types of property or services listed in the definition.

---

U.S.C. § 2339B(a).  The term "material support or resources" in § 2339B(a) "has the same meaning given that term in section 2339A[.]"  18 U.S.C. § 2339B(g).

In matters of statutory interpretation, the Court turns first to the plain language of the statute. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Section 2339A(b)(1) defines the term "material support or resources" as "*any* property, tangible or intangible, or service, *including*" the items listed above. (Emphasis added). The terms "any" and "including" show that the list of items is not exhaustive.[3]

This interpretation of "service" is consistent with the Supreme Court's analysis of that term in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23–25 (2010). In that case, individuals and groups brought a pre-enforcement challenge to the material support statute, § 2339(B), arguing that terms in the statute, including the term "service" in § 2339A(b), were vague because they could reach activities such as political advocacy on behalf of groups designated as foreign terrorist

---

[3]        Defendant cites to *United States v. Abu Khatallah*, 151 F. Supp. 3d 116 (D.D.C. 2015), for the proposition that the types of property and services listed in the definition of "material support or resources" in § 2339A(b)(1) are exhaustive. However, the Court agrees with the Government that the court in *Abu Khatallah* was referring to the statutes listed in § 2339A(a) as an "exhaustive list of federal crimes for which a person can be charged for providing 'material support[,]'" not to the definition of "material support or resources" in § 2339A(b)(1). *Id.* at 141 (concluding the terms "material support" are "clear and definite" and not susceptible to the "unfettered discretion of any law enforcement officer"). Defendant criticizes this interpretation in his final post-hearing reply brief [Doc. 83], asserting the Middle District of Florida also interpreted *Khatallah* as finding the definition in § 2339A(b)(1) to provide an exhaustive list of the types of material support and resources covered by the statute. *See United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *2 (M.D. Fla. 2020).

        The Court also disagrees with Defendant's interpretation of *Al-Azhari*. In rejecting defendant's claim that § 2339B is unconstitutionally vague as applied to his charged conduct of providing "personnel (including himself) and services" to ISIS, the court reasoned that "[t]he Government does not possess limitless discretion because it is bound by provisions such as § 2339B(a)(1) [(the mens rea requirement)] and § 2339B(h) [(the definition of personnel and the safe harbor for independent activity)], including the requirement that there be a connection between the personnel and services provided and the FTO." *Id.* The cited subsections—the required intent, the definition of personnel, and the safe harbor for independent activity—are the provisions that the *Al-Azhari* court found provided an "objective standard" for one to assess whether their conduct would be unlawful material support. *Al-Azhari* does not state that the definition of material support and resources in § 2339A(b)(1) provides an exhaustive list of the types of services that can be material support.

organizations. *Id.* at 19-25. The Supreme Court could have easily disposed of this question if it, like Defendant Carpenter, interpreted "service" as being limited to the fourteen items listed in § 2339A(b)(1), because political advocacy is not one of the fourteen items listed in the definition. Instead, the Court found that "independent advocacy" did not fall within "service" under § 2339A(b), because the term "service" "refers to concerted activity, not independent advocacy." *Id.* at 23 (citing to Webster's Third New International Dictionary 2075 (1993)). "On the other hand, a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Id.* at 24. Thus, the Supreme Court in *Humanitarian Law Project* did not limit the term "service" to the fourteen categories of activities listed in § 2339A(b)(1), and neither does this Court.

The Court of Appeals for the Sixth Circuit recently observed that the term "service" in § 2339A(b)(1) is not defined in the statute. *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020). Instead, "the term 'service' also refers to 'concerted activity,' including any 'act done for the benefit or at the command of" a foreign terrorist organization." *Id.* (quoting *Humanitarian Law Project*, 561 U.S. at 23–24 (in turn, quoting Webster's Third New International Dictionary 2075 (1993))). In *Hendricks*, the Court held that forming and operating a terrorist cell constituted material support under § 2339B by providing either "personnel" *or* a "service." *Id* at 352-54 (analyzing the sufficiency of the evidence presented at trial).

Defendant relies on the decision in *United States v. Awan*, 459 F. Supp. 2d 167 (E.D.N.Y. 2006), to support his argument that the listed items in § 2339A(b)(1) comprise the entire universe of services constituting material support. In *Awan*, the court dismissed two counts of the indictment, both alleging conspiracy to provide "material support and resources" as defined in § 2339A(b), because they failed to give adequate notice of the specific crimes with which defendant

7

was charged. 459 F. Supp. 2d at 175-76. The court found "the indictment uses the generic expression 'material support,' as defined in 18 U.S.C. § 2339A(b), without specifying which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered." *Id.* at 175. The government argued that it intended to prove that defendant provided material support in the form of "money" and "personnel," but the court held that the indictment failed to reveal whether the grand jury considered either of those items when finding material support. *Id. Compare United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 165-66 (E.D.N.Y. 2008) (observing that a superseding indictment in *Awan* alleging material support in the form of money and personnel was found to be sufficient).

*Awan* stands for the proposition that an indictment must charge the type of material support and resources the defendant is alleged to have provided. In other words, stating that a defendant provided material support and resources without stating the type of property or services provided could be deficient. *Awan* does not limit "services" to the items listed in § 2339A(b) but states that any one of the items listed in that section would be a crime, if provided within the context of the material support statute. The Court finds that *Awan*'s holding that the failure to charge the type of material support or resources provided does not restrict the term "services" to the items listed in the definition in § 2339A(b)(1).

Based upon the plain language of § 2339A(b) and the case law interpreting it, the Court finds that the allegations in the Superseding Indictment provide constitutionally adequate notice of the charge. Defendant's Motion for Dismissal on the Grounds the Indictment is Insufficient [Doc. 40] should be denied.

## B. Vagueness and Overbreadth

As stated above, "material support or resources" is defined as

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1). Defendant Carpenter challenges § 2339A(b) as being both unconstitutionally vague and overly broad as applied to his alleged activity. He argues that the definitional statute is vague because a person of common intelligence would not understand that translation services are prohibited. He maintains § 2339A(b) is overly broad because it criminalizes constitutionally protected speech. A review of the relevant caselaw convinces the Court that § 2339A(b) is neither unconstitutionally vague nor overly broad as applied to the alleged conduct of translation services.

*(1) Vagueness*

A criminal statute will be deemed unconstitutionally vague in violation of the Due Process Clause if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). No one "shall be held criminally responsible for conduct which he [or she] could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). Indeed, under "our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019).

To survive a vagueness challenge, a statute must give "relatively clear guidelines as to prohibited conduct." *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525 (1994). The presence of "objective criteria" will "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute," and inclusion of "a scienter

requirement" provides notice that the conduct is prohibited. *Id.* at 526. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Thus, statutes that "tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings"—have been deemed unconstitutionally vague. *Id.*

"Few statutes meet the void-for-vagueness threshold: a 'strong presumptive validity' applies to all acts of Congress and mere 'difficulty' in determining a statute's meaning does not render it unconstitutional." *United States v. Kettles,* 970 F.3d 637, 650 (6th Cir.) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)), *cert. denied*, 141 U.S. 924 (2020). Accordingly, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Chapman v. United States*, 500 U.S. 453, 464 (1991). However, the endeavor to preserve a statute from a vagueness challenge must not "'pervert[] the purpose of a statute.'" *Humanitarian Law Project*, 561 U.S. at 17 (quoting *Scales v. United States*, 367 U.S. 203, 211 (1961)).

Moreover, "[h]ypothetical vagueness is not enough; the statute must be unconstitutionally vague 'as applied to [t]his particular case.'" *Kettles,* 970 F.3d at 650 (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)); *see also Williams*, 553 U.S. at 304 (observing that "ordinarily [one] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 n.6 (6th Cir. 2012) (observing that apart from First Amendment issues, a party "'has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her

10

specific conduct'" (quoting *United States v. Pungitore,* 910 F.2d 1084, 1103 (3rd Cir. 1990)). Here, the Court evaluates Defendant's "as applied" vagueness challenge in light of Defendant's alleged conduct of providing translation services to ISIS.

The Superseding Indictment charges that Defendant attempted to provide "translation services[] *to*" ISIS, knowing that ISIS was a foreign terrorist organization [Doc. 73 (emphasis added)]. Defendant states that the affidavit provided in support of the search warrant alleges he helped an undercover agent, posing as someone with connections to ISIS's media department, edit an English translation of an Arabic video, which was allegedly released by ISIS and documents ISIS's military operations in the Sinai Peninsula [Doc. 59 p.1]. Defendant contends that the definition of "material support" in § 2339A(b) fails to give notice that it encompasses editing a translation at the request of someone with an alleged connection to a designated terrorist organization. He also asserts that extending the definition of "material support" to cover his alleged conduct gives too much discretion to government agents and prosecutors.

As the Government points out [Doc. 68 pp. 1–4], the Supreme Court has already determined the term "services" in § 2339A(b) is not unconstitutionally vague, because that term is limited to coordinated activities. *Humanitarian Law Project*, 561 U.S. at 23–24; *see also Columbia Nat. Res., Inc.,* 58 F.3d at 1107–08 (observing the Supreme Court's prior determination that the "pattern of racketeering activity" was not unconstitutionally vague guides the court's analysis of the "as applied" challenge before it). First, the Supreme Court observed that the terms in the definition of material support, including the term "services," do not require "untethered, subjective judgments" as to their meaning. *Humanitarian Law Project*, 561 U.S. at 21. Instead, the statute defines "material support" and provides "narrowing definitions" of the terms "training," "expert advice or assistance," and "personnel." *Id.* Also, "the knowledge requirement of the

11

statute further reduces any potential for vagueness[.]"  *Id.*; *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 7334512, at *2 (M.D. Fla. 2020) (holding § 2339B is not unconstitutionally vague because the government is limited in whom it can prosecute by the statute's *mens rea* requirement, definitional and safe harbor provisions, and the requirement of a "connection between the . . . services provided and the FTO").[4]

The Supreme Court observed that unlike with "personnel," the term "service" is not expressly defined in § 2339A(b).  *Humanitarian Law Project*, 561 U.S. at 23–24.  However, the Court found the use of the term "service" within the material support statute allows an individual to know if his or her activity is prohibited:

> The statute prohibits providing a service "*to* a foreign terrorist organization." § 2339B(a)(1) (emphasis added).  The use of the word "to" indicates a connection between the service and the foreign group.  We think a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause.

*Id.* at 24.  The Court also evaluated "service" in relation to the other terms in the definition of material support:

> if independent activity in support of a terrorist group could be characterized as a "service," the statute's specific exclusion of independent activity in the definition of "personnel" would not make sense. Congress would not have prohibited under "service" what it specifically exempted from prohibition under "personnel." The other types of material support listed in the statute, including "lodging," "weapons," "explosives," and "transportation," § 2339A(b)(1), are not forms of support that could be provided independently of a foreign terrorist organization. We interpret "service" along the same lines.

---

[4]     See discussion of *Al-Azhari* in footnote 3.

12

*Id.* The Supreme Court determined, despite the fact that coordination with or direction by a foreign terrorist organization raises questions of degree, the term "service" was not unconstitutionally vague as applied to plaintiffs' pre-enforcement challenge concerning political advocacy. *Id.* at 25.

Defendant contends that the above holding in *Humanitarian Law Project* does not foreclose a finding that § 2339A(b) is unconstitutionally vague as applied to other alleged conduct, such as translation services. *See Humanitarian Law Project,* 561 U.S. at 21 (observing that "the scope of the material-support statute may not be clear in every application . . . [b]ut . . . the statutory terms are clear in their application to plaintiffs' proposed conduct"). Defendant makes three main arguments in support of a finding that § 2339A(b) is unconstitutionally vague as applied to translation services: (1) translation services do not fall within any of the fourteen listed services or property in § 2339A(b)(1) or specifically within "personnel" and "expert advice or assistance," (2) interpreting translation services to be material support under the statute contravenes the safe harbor for independent work in § 2339B(h); and (3) the legislative history for the material support statute shows that Congress did not intend translation services to be material support.

*(i)*    First, Defendant contends that his alleged conduct does not fall within either "personnel" or "expert advice or assistance," which he characterizes as the two most likely categories of the services listed in § 2339A(b)(1). Thus, he argues that § 2339A(b)(1) fails to give him fair notice that translation services are material support. He asserts that "personnel" requires either "employment or [an] employment-like relationship" between the individual and the foreign terrorist organization. *United States v. Lindh*, 212 F. Supp. 2d 541, 574 (E.D. Va. 2002) (providing plain meaning of "personnel" in context of § 2339B; finding "personnel" is designed to encompass provision of human resources, "not independent advocacy of an organization's interest or agenda;"

13

and concluding "personnel" is not unconstitutionally vague);[5] *see also United States v. Marzouk*, 383 F. Supp. 2d 1056 (N.D. Ill. 2005) (rejecting facial vagueness challenge to § 2339B based on term "personnel"). Defendant maintains that translating documents, without more, does not constitute providing "personnel" as material support. *See United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 181–82 (E.D.N.Y. 2008).

In *Taleb-Jedi*, the court held that "[t]he provision of material support in the form of personnel at issue here—participation in the Political Department—is 'unambiguously encompassed' within the statute because . . . by engaging in this conduct and providing this support, defendant created an employment relationship with the [foreign terrorist organization]." *Id.* at 182 (finding, based on the facts proffered by the government, that defendant's participation in the Political Department was "akin to an employment relationship"). However, the court held that in the pretrial phase of proceedings, "it is not clear . . . how teaching English or translating documents, without knowing more factual specifics, would constitute the provision of personnel under 2339B[.]" *Id.* at 183. The court found "personnel" was not unconstitutionally vague as applied to defendant's conduct as an employee of the Political Department but that the government's other allegations of "chanting, teaching . . . English, and translating . . . documents, without more specific facts adduced at trial, may be insufficient to survive a vagueness challenge."[6] *Id.*

[5]     The *Lindh* case was decided prior to Congress's 2004 amendment to the material support statute, adding a clarifying definition of the term "personnel." *See United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 181 (E.D.N.Y. 2008) (observing that in 2004, the definition of "personnel" was clarified in an amendment to the statute).

[6]     Significantly, in the *Taleb-Jedi* case, the court did not dismiss the allegations that defendant provided material support by teaching English and translating documents. *Taleb-Jedi*, 566 F. Supp. 2d at 184. Instead, the court indicated that, depending on the facts presented at trial, the

14

Defendant argues that he is not accused of working in ISIS's media department and that translation of ISIS releases only comprises twenty percent (20%) of the work of his independent publishing house. Defendant argues that outside of the employment context, translating a video or editing a translation cannot be deemed material support or survive a vagueness challenge. Defendant also argues that translation services does not fall "comfortably" within "expert advice or assistance," because he lacks specialized knowledge in the form of degrees in Arabic or English or fluency in Arabic.

Defendant's arguments regarding the terms "personnel" and "expert assistance or advice" flow from his interpretation of "services" as being limited to the fourteen items listed in § 2339A(b)(1). As the Court discussed in part A above, both the plain language of § 2339A(b)(1) and the case law demonstrate that "services" is not so limited. Instead, the material support statute requires that the provision of services, such as translation services, be provided "*to* a foreign terrorist organization," meaning in coordination with or at the direction of the foreign terrorist organization. *Humanitarian Law Project*, 561 U.S. at 24–25. The statute's requirement that the "service" be a coordinated activity puts the "person of ordinary intelligence" on notice that translating materials at the direction of or in coordination with a foreign terrorist organization constitutes material support, whereas independently translating materials would not. *See id*. at 24.

As pointed out by the Government [Doc. 68 p. 15–16], courts have found the provision of translation services can constitute material support under § 2339B. *See*, e.g., *United States v. Mehanna*, 735 F.3d 32, 47–51 (1st Cir. 2013) (rejecting defendant's legal challenge to whether "translation activities" could be considered material support and declining to evaluate the

---

defendant may be able to successfully raise a vagueness challenge at that time. *Id.* The same is true for Defendant Carpenter, as discussed in subsection *(iv)* below.

sufficiency of the evidence because another theory—traveling to join a terrorist training camp—provided a sufficient basis for conviction); *United States v. Osadzinski*, No. 19 CR 869, 2021 WL 3209671, at *2 (N.D. Ill. July 29, 2021) (holding term "service" is not vague as applied because "defendant's conduct of creating a computer script to prevent ISIS videos from being deleted, and translating ISIS videos into English for pro-ISIS media organizations, clearly constituted 'concerted activity'"); *see also United States v. Mustafa*, 406 F. App'x 526, 530 (2d Cir. 2011) (determining § 2339B is not unconstitutionally vague as applied because a "person of ordinary intelligence would also know that creating and maintaining websites that host training manuals and propaganda for jihadist organizations and provide instructions for making explosive devices and other weapons, is . . . prohibited"); Taleb-Jedi, 566 F. Supp. 2d at 184 (recognizing under some "circumstances . . . translating documents would be prohibited" as material support).

Thus, the Court finds that Defendant's activity need not be shoe-horned into "personnel" or "expert advice or assistance"[7] or be one of the expressly listed items in § 2339A(b)(1) in order

---

[7]    Defendant makes a similar argument regarding "expert advice or assistance," contending that unless services is limited to one of the fourteen items in § 2339A(b)(1) it is unconstitutionally vague as applied to his alleged conduct of providing translation services [Doc. 59 p. 12]. Defendant then asserts that of the fourteen items, translation services must come within "personnel" or "expert advice or assistance." He maintains that his activity does not plainly come within the definition of "expert advice or assistance," which is defined in § 2339A(b)(3) as "advice or assistance derived from scientific, technical or other specialized knowledge," because he is not fluent in Arabic, nor does he have an advanced degree in Arabic or English. This argument fails for the same reason as his argument on "personnel." As discussed above, "services" is not limited to the activities or items listed in § 2339A(b)(1). The Government is not restricted to proceeding under a theory of "expert assistance or advice" and, thus, the question of whether Defendant has specialized knowledge (a matter for the jury) is not critical to Defendant's culpability. Instead, a translator provides material support in the form of "services" when he or she provides a translation at the direction of or in coordination with the foreign terrorist organization. Both an experienced and highly qualified translator and an inexperienced and unqualified translator could provide a translation at the direction of or in coordination with a foreign terrorist organization. As "person[s] of ordinary intelligence," both are on notice that their translation services violate the material support statute. *Humanitarian Law Project*, 561 U.S. at 24.

16

for the Defendant to be put on notice that translation services provided "to" (meaning at the direction of or in coordination with) ISIS would be material support. *See, e.g., Estate of Parsons v. Palestinian Authority*, 651 F.3d118, 125–26 (D.C. Cir. 2011) (holding that distracting local security so that third party could plant a bomb is a "service" and, therefore, material support and declining to analyze whether conduct also constituted providing "personnel").

   *(ii)*  Defendant's second argument echoes his first. He contends that unless translation services are restricted to the definitions of "personnel" or "expert advice or assistance," then the definition of material support contravenes the safe harbor for independent work in § 2339B(h). Section 2339B(h) provides

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h). In *Humanitarian Law Project*, the Supreme Court applied this safe harbor provision to the term "service," reasoning that "if independent activity in support of a terrorist group could be characterized as a service, the statute's specific exclusion of independent activity in the definition of personnel would not make sense." 561 U.S. at 24. "Congress would not have prohibited under 'service' what it specifically exempted from prohibition under 'personnel.'" *Id.* Thus, the Supreme Court recognized that for a service to constitutes material support under § 2339B, the service must be provided at the direction of or in coordination with the foreign terrorist organization. *Id.* "Service" under § 2339A(b)(1) does not contravene the safe harbor for independent activity but, instead, embodies it.

17

Contrary to Defendant's argument, the safe harbor for independent work does not mean that translation services can only be material support if the Defendant was an employee of ISIS. Instead, the provision of translation services at the direction of or in coordination with ISIS would still constitute services provided in material support of ISIS, even if the person providing translation services was not an employee of ISIS. Conversely, as recognized in *Taleb-Jedi*, independent translation of documents may not constitute material support even if the defendant is in an employee-like relationship with the foreign terrorist organization. 566 F. Supp. 2d at 183.

Defendant also argues that the statute is vague as applied to his editing a single translation of an ISIS video because it does not specify how much coordination is necessary for a translation service to constitute material support. Similarly, Defendant argues that even if his alleged activity could be considered a prohibited service under § 2339A(b)(1), it is not "material," i.e., of serious or substantial import.

The caselaw reveals that "material" refers more to the nature of the support, rather than just the quantity of support the defendant provides. "[E]ven seemingly benign support" can be unlawful material support under § 2339B. *Id.* at 36; *see also Jabateh v. Lynch*, 845 F.3d 332, 342 (7th Cir. 2017) (relying on *Humanitarian Law Project* to affirm denial of asylum because petitioner provided material support to a foreign terrorist organization in the form of "sporadic and infrequent . . . interpreter services to a LURD member for medical appointments and social errands"). No *de minimis* exception exists for provision of material support under § 2339B. *United States v. Hashmi*, No. 06 Crim. 442(LAP), 2009 WL 4042841, at *7 (S.D.N.Y. Nov. 18, 2009) (rejecting defendant's as-applied vagueness challenge to § 2339A(b)(1) and declining "to create a *de minimis* exception" for providing military gear consisting of "waterproof socks, ponchos, and raincoats").

In *United States v. Wright*, the First Circuit held that the trial court defined the term "coordination" too broadly in instructing the jury that coordination with a foreign terrorist organization "'doesn't have to be direct orders, but in coordination with the strategy, the tactics of the foreign terrorist organization[.]'" 937 F.3d 8, 27–28 (1st Cir. 2019). The court determined "the most natural reading" of the instruction erroneously permitted the jury to convict defendant of material support based on his coordination "'with the strategy and tactics of the foreign terrorist organization,'" rather than with the organization itself. *Id.* at 29. It concluded "the instruction implicitly suggests . . . that a jury may deem a defendant to have acted 'in coordination with' a terrorist organization based merely on a finding that the defendant had operated in parallel to that organization." *Id.* The court found no authority to support this construction as an accurate definition of "coordination" within the material support statute. *Id.* From this analysis in *Wright*, the Court discerns that acting in "coordination" with a foreign terrorist organization is more than just taking independent action to further the publicly stated goals or tactics of the organization.

At the motion hearing, Defendant Carpenter argued *Wright* shows that "coordination" must be with the foreign terrorist organization itself, not with the organization's publicly available strategy. Thus, he contends the material support statute is vague as applied to his alleged conduct of translation services because an ordinary person would not know that editing a single translation was covered.[8] However, the Court finds the safe harbor provision in § 2339B(h) alleviates the

_____

[8]    Defendant's argument ignores the Government's assertion Defendant worked on the translation in coordination with and at the request of a person (the undercover agent) whom Defendant believed was working for ISIS. The question of "whether enough coordination exist[s] to criminalize the defendant's translations" is one of fact to be determined by the jury. *Mehanna*, 735 F.3d at 49 (addressing defendant's challenge to jury instruction on material support vs. independent actions); *see also Humanitarian Law Project*, 561 U.S. at 24–25 (determining the constitutionality of the degree of coordination necessary to constitute material support is a matter that "must await a concrete fact situation" (internal quotation omitted)). Defendant Carpenter also argues that the safe harbor provision's exemption of independent work lulled him into believing

19

potential for vagueness raised by Defendant. "Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h). Thus, individuals working *parallel* to the organization to further the organizations publicly stated goals are not working in "coordination" with the organization. *See Humanitarian Law Project*, 561 U.S. at 31–32 ("The statute reaches only material support coordinated with or under the direction of a designated foreign terrorist organization. Independent advocacy that might be viewed as promoting the group's legitimacy is not covered."). In § 2339B, "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." *Id.* at 36. "Coordination" in relation to the provision of translation services as material support is not unconstitutionally vague because the meaning of "coordination" is limited by the statute's safe harbor for independent work.

In summary, the safe harbor for independent activity in § 2339B(h) does not render the statute vague as applied to translation services.

(iii)    Defendant's third argument focuses on Congress's intent in passing the material support statute.

> In enacting section 2339B, Congress found that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." *See* AEDPA § 301(a)(7), 110 Stat. 1247 (1996). The purpose section 2339B is intended to advance is "to provide the Federal Government the fullest possible basis, consistent with the Constitution, to prevent persons within the United States, or subject to the jurisdiction of the United States, from providing material support or resources to foreign

---

his alleged actions were not covered by the statute because his alleged "illegal" activity was identical to the legal translation work he has performed for years. This is but another way of saying Defendant disputes that he was acting in coordination with ISIS. As stated, whether Defendant acted in coordination with ISIS is a matter for the jury to decide.

organizations that engage in terrorist activities." *Id.* at § 301(b), 110 Stat 1214, 1247.

*United States v. Paracha*, No. 03 CR. 1197(SHS), 2006 WL 12768, at *28 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 237 (2d Cir. 2008). "The material-support statute is, on its face, a preventive measure—it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Humanitarian Law Project*, 561 U.S. at 35. "'Material support' . . . frees up other resources within the [foreign terrorist] organization that may be put to violent ends." *Id.* at 30. "Providing foreign terrorist groups with material support in any form also furthers terrorism by straining the United States' relationships with its allies and undermining cooperative efforts between nations to prevent terrorist attacks." *Id.* at 32.

Defendant argues that the alleged action of providing translation services does not make terrorist attacks more likely to occur and does not free up other resources to be put to violent ends. Thus, he contends that translation services are not what Congress had in mind when it enacted § 2339B. The Court respectfully disagrees. In his dissent in *Humanitarian Law Project*, Justice Breyer reasoned that the "contributions" and "services" Congress meant to reach with the statute are "contributions of goods, money, or training and other services (say, computer programming) that could be diverted to, or free funding for, terrorist ends." *Id.* at 48 (contrasting these goods and services with nonfungible activity like "[p]eaceful political advocacy") (Breyer, J., dissenting). The Court finds that translation services contributed to a foreign terrorist organization could free funds needed to hire a translator, which funds in turn could be diverted to terrorist acts. Like the majority in *Humanitarian Law Project*, the Court finds Congress has limited the sweep of this reasoning by limiting the statute's reach to "only material support coordinated with or under the direction of a designated foreign terrorist organization." *Id.* at 32. Thus, the charged conduct falls

within congressional intent, and the legislative history reveals that the statute is not unconstitutionally vague as applied to translation services.

(iv)     Finally, the Court finds that Defendant argues specific facts, such as that he only edited a single translation of a video at the request of a person with an alleged connection to ISIS's media department, that this alleged illegal conduct was very similar to the lawful activity he engaged in as the founder of an independent publishing house, and that he lacks specialized knowledge, such as higher education degrees or fluency in Arabic.  The Government counters these facts with others such as statements Defendant made in a post-arrest interview and that Defendant provided a complete English transcript of the video believing it was for ISIS and would be used by ISIS.  These arguments and counter arguments ask the Court to assume or determine facts that are not in the record.

Courts have found pretrial determination of whether a statute is unconstitutionally vague as applied to a defendant's particular conduct to be premature.  *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997) (holding district court's pretrial consideration of whether statute prohibiting possession of a firearm by a marijuana user was unconstitutionally vague was error because "such a sensitive and fact intensive analysis as that undertaken by the district court should be based only on the facts as they emerge at trial"); *United States v. Thompson*, 207 F. Supp. 3d 106, 112 (D. Mass. 2016) (holding a pretrial motion to dismiss the indictment for vagueness "is premature, as the question of whether the criminal offenses are vague as applied to the defendants' conduct needs to be decided in context of the evidence presented at trial"); *United States v. United Mem. Hosp.*, No. 1:01CR238, 2002 WL 33001119, at *4 (S.D. Mich. July 23, 2002) (holding "this pre-trial challenge to the vagueness of the federal statutes at issue is premature and should be raised, if at all, under Federal Rule of Criminal Procedure 29"); *see also* Fed. R. Crim. P. 12(a)

22

(permitting a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits"). The specific facts raised by Defendant Carpenter in his vagueness challenge are not yet ripe for adjudication. Defendant may, instead, move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, raising an as applied vagueness challenge, to the specific evidence presented at trial.

Based upon the plain language of the statute, the relevant caselaw, and the legislative history, the Court finds § 2339A(b)(1) is not unconstitutionally vague as applied to translation services provided to—that is, at the direction of or in coordination with—a foreign terrorist organization.

*(2) Overbreadth*

An otherwise constitutional statute "may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). A statute is overbroad if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (internal quotations and citations omitted). "[T]he threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Id.* at 119. While laws may not restrict speech simply because of its content, "reasonable 'time, place, and manner' regulations" are permissible "to further significant governmental interests[.]" *Grayned*, 408 U.S. at 115. Section 2339B is "directed at conduct" (the provision of material support to foreign terrorist organizations), and, thus, intermediate scrutiny[9]

---

[9]     Under intermediate scrutiny, a "'content-neutral regulation will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *Humanitarian Law Project*, 561 U.S. at 27 (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)).

23

is applied to most applications of the statute. *Humanitarian Law Project*, 561 U.S. at 28. However, when the conduct triggering the application of § 2339B "consists of communicating a message," the Court must apply the "more demanding standard" of strict scrutiny. *Id.*

Defendant Carpenter argues that the material support statute is overbroad in violation of his rights under the First Amendment because his alleged act of editing a single translation of an ISIS video is not fungible (does not save ISIS funds that it can then divert to terrorism), does not lend legitimacy to ISIS to aid in recruitment or fundraising, and places no strain on the United States' relations with foreign countries. Defendant contends that the alleged conduct, providing translation services, implicates the First Amendment because it involves the "communicative activity" of translating spoken and written language. He maintains that the material support statute fails to survive strict scrutiny because the application of the statute to his alleged conduct does not further the government's interest in combatting terrorism.

Defendant's overbreadth challenge is quickly dispatched. In *Humanitarian Law Project*, the Supreme Court rejected a First Amendment challenge to § 2339B, observing the material support statute protects an individual's freedom to "say anything they wish on any topic," including terrorism and foreign terrorist organizations. 561 U.S. at 25–26; *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011). The statute "does not prohibit *independent* advocacy of any kind." *Id.* (citing *Humanitarian Law Project,* 561 U.S. at 26). Nor does it "prohibit or punish mere membership in or association with terrorist organizations." *Id.* (citing *Humanitarian Law Project,* 561 U.S. at 26). Section 2339B does not

> suppress ideas or opinions in the form of "pure political speech." Rather, [it] prohibit[s] 'material support,' which most often does not take the form of speech at all. And when it does, the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations.

24

*Humanitarian Law Project,* 561 U.S. at 26.  As such, the statute is not overbroad.  *Farhane,* 634 F.3d at 137.

"[O]therwise-protected speech rises to the level of criminal material support only if it is 'in coordination with foreign groups that the speaker knows to be terrorist organizations.'"  *Mehanna*, at 49 (holding that trial court did not violate the First Amendment in leaving for the jury whether defendant's translations were sufficiently coordinated with the foreign terrorist organization to constitute unlawful material support).    Here, the Superseding Indictment charges Defendant Carpenter with providing "translation services" to ISIS.   The Government proffers that Defendant translated materials at the request of an individual, whom Defendant believed was an employee of ISIS's media department, and for the purpose of spreading ISIS's message to a broader audience. Such conduct goes beyond merely "voicing support for ISIS."  *Osadzinski*, 2021 WL 3209671, at *3 (internal quotation omitted).

In *Osadzinski*, the court rejected defendant's argument that § 2339B was overbroad as applied to his conduct:

> Defendant was not merely praising ISIS on his own social media accounts or "vigorously advocating the goals and philosophies of [ISIS]," . . . but he was also *providing translation services* and building a computer script that prevented ISIS videos from being deleted—a service he believed was "the highest form of jihad."  The program benefitted the FTO by quickly and efficiently re-uploading videos, operating at a speed and scale much greater than could any one individual. The scale and sophistication of this script transforms his conduct from an individual expressing an opinion, to providing a service to an FTO.  And, based on the allegations in the indictment and the government's proffered bill of particulars, there is no question that this was done with the intent to aid ISIS.

*Id.* at *3–4 (emphasis added).  Similarly, in the instant case, the Court finds that the alleged translation services go beyond Defendant merely expressing an opinion on ISIS or even

independently advocating for ISIS.  Instead, Defendant is alleged to have provided a service in translating a video of ISIS's military campaign.  The Court finds the alleged conduct was not protected speech and Defendant's motion to dismiss the charge on this ground is denied.

### C. Entrapment

Defendant asks the Court to dismiss the charge because he was entrapped as a matter of law.  He argues that the Government created and solicited the commission of the alleged crime to prosecute him, after a years-long investigation of his lawful activity of independently translating, editing, and releasing ISIS materials.  He asserts that he is a law-abiding citizen and was not predisposed to commit material support of a terrorist organization.  Defendant maintains that, instead, the undercover agent played to his sympathies by repeatedly pleading with him to review a translation, thereby inducing the alleged conduct.

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  "Generally, motions are capable of determination before trial if they raise questions of law rather than fact."  *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976); *see also United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir. 1973) (affirming trial court's ruling that a "'motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence'").  "A defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."  *United States v. Covington*, 395 U.S. 57, 60 (1969).

"A district court can find entrapment as a matter of law where (1) the testimony and facts are undisputed; and (2) the evidence demonstrates a patently clear absence of predisposition."  *United States v. Amawi*, 695 F.3d 457, 483 (6th Cir. 2012); *see also United States v. Fox,* No. 1:20-

26

CR-1832022 WL 1025938, at *1 (W.D. Mich. Jan. 25, 2022) (quoting *Amawi*). As discussed below, the Court finds Defendant's motion fails on both fronts: (1) The facts of Defendant's predisposition or lack thereof are disputed and (2) the absence of predisposition is not "patently clear."

*(1) Nature of Facts*

"In cases where the evidence bearing on the issue of entrapment is in dispute, the defense of entrapment must be submitted to the jury." *United States v. McLernon*, 746 F.2d 1098, 1110 (6th Cir. 1984) "It is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question." *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009); *see also Fox*, 2022 WL 1025938, at *3. The issues of entrapment and intent are "'intertwined'" and "'typically based on credibility determinations, an area traditionally reserved for jury resolution.'" *Id.* (quoting *United States v. Fadel*, 844 F.2d 1425, 1430 (10th Cir. 1988) (observing that the "vast majority of courts" disfavor pretrial determination of entrapment)); *see also United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984) (holding that in determining entrapment as a matter of law, "the facts must be undisputed," and the court may not choose between conflicting accounts or determine credibility).

Here, Defendant argues the facts are undisputed because the charges derive from recorded, online messaging chats. However, Defendant relies on inferences from his actions in the preceding months and years to show his lawful intent. Defendant provides a ten-page "Statement of Facts," [Doc. 64 pp. 2–12], which he claims demonstrates his intent was to lawfully translate and release pro-ISIS materials. In this regard, he argues that "[h]e was . . . subject to a years long investigation and undercover operation – without any criminal enterprise or activity being discovered; what was discovered was expressive speech and activity, protected not only by the U.S. Constitution but by

27

virtue of the [safe harbor provision in the material support statute]" [Doc. 64, p. 14]. Defendant asserts that because the FBI had been investigating him since 2015 but had not prosecuted him and because an agent commented that the FBI would be waiting for him to "cross the line" [Doc. 64 p. 4], his prior translations of ISIS materials were lawful, and he had no intent to act illegally.

The Government, however, disputes that Defendant's prior translations of ISIS materials was legal [Doc. 68 pp. 13, 22–23]. Defendant interprets his review of other cases and FBI investigations as evidencing his intent to stay on the right side of the law [*see* Doc. 59, p. 10 (discussion of whether degrees of coordination render the statute vague)]. The Government interprets this activity as evidencing his predisposition to commit the alleged crime [Doc. 68, pp. 22–23].

The Court finds that the facts, particularly the evidence relating to Defendant's intent, is subject to differing interpretations. Resolving the matter of Defendant's intent will require the jury to make credibility determinations. The Court finds the issue of entrapment is not susceptible to pretrial determination but, instead, must be tested in the crucible of a trial. Accordingly, the Court cannot find entrapment as a matter of law.

*(2) Predisposition*

Even if the facts were undisputed, the Court must still find that absence of Defendant's predisposition to commit material support is "patently clear." Defendant also cannot overcome this hurdle.

"An entrapment defense has two elements: (1) 'government inducement of the crime, and [(2)] a lack of predisposition on the part of the defendant to engage in the criminal conduct.'" *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011) (alteration in original) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Inducement requires "an 'opportunity' *plus*

28

something else—typically excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010) (emphasis in original) (internal quotation omitted). "The key question in determining predisposition is whether law enforcement planted a 'criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provided an opportunity to commit a crime to one who was already predisposed to do so.'" *Id.* (quoting *United States v. Al–Cholan*, 610 F.3d 945, 950 (6th Cir. 2010) (internal quotation omitted)).

A host of factors are relevant to the determination of whether a defendant was predisposed: (1) "'[t]he character or reputation of the defendant, including any prior criminal record;'" (2) "'whether the suggestion of criminal activity was initially made by the Government;'" (3) "'whether the defendant was engaged in criminal activity for profit;'" (4) "'whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducements or persuasion;'" and (5) "'the nature of the inducement or persuasion supplied by the Government.'" *Al-Cholan*, 610 F. 3d at 950 (quoting *United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir. 1990) (internal quotation omitted)). "The Sixth Circuit Model Jury Instructions add a sixth factor: whether 'the defendant took part in any similar criminal activity with anyone else before or after.'" *Fox*, 2022 WL 1025938, at *3 (quoting the Committee Commentary to Sixth Circuit Pattern Criminal Jury Instruction § 6.03). The Court examines these factors in light of Defendant's asserted facts.

Defendant argues that his "character and reputation" reveal that he had no predisposition to provide material support to ISIS but, rather, exhibited "'a generic inclination to act within a broad range'" in translating ISIS materials or supporting and promoting ISIS's political goals [Doc. 64 p. 15 (quoting *Jacobson v. United States*, 503 U.S. 540, 551 (1992) (observing

29

defendant's subscription to *Bare Boys* magazine, while showing his general sexual tastes, "merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition.")]. Defendant argues that his legal, independent translation of ISIS releases is alone insufficient to show predisposition. He also maintains that his independent support of ISIS's political goals is protected by the Constitution.

The Court finds that Defendant's Statement of Facts shows evidence, beyond Defendant's mere translation of documents or general support of ISIS's political goals, that indicates a predisposition to provide support to ISIS: Defendant was placed on the "no-fly list," Defendant brought up to FBI agents a case in which the defendant was accused of material support based upon translations along with other conduct and discussed whether translations could violate the law, Defendant's blog was suspended because he posted ISIS's weekly reported enemy casualties along with "combat visuals," and Defendant formed a private group of trusted individuals on an encrypted chat system to discuss ISIS news and content [Doc. 64 pp. 4–8]. According to the Government, Defendant's messages on his private chat group reveal he attempted to warn others about possible undercover surveillance [Doc. 68 p. 23]. These actions indicate a predisposition toward providing material support to ISIS.

Regarding the second factor, although Defendant argues that the undercover agent initially suggested the alleged criminal activity, Defendant's facts show that he was repeatedly questioned by law enforcement about the nature and extent of his support of ISIS. Moreover, Defendant's computer was seized and searched by law enforcement. These facts, as alleged by Defendant, could be interpreted as portraying an individual trying to skirt the edge of legality, if not actually cross it.

The third factor does not support predisposition because the Defendant contends and the Government acknowledges, Defendant was never paid for his alleged criminal conduct.

The Court jointly considers the fourth and fifth factors—whether Defendant's reluctance to commit the offense was overcome by the agent's repeated requests or persuasion and the nature of the persuasion by the agent. Our appellate court has characterized the fourth factor, "whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducements,'" as the "most important factor in determining lack of predisposition as a matter of law[.]" *McLernon*, 746 F.2d at 113 (quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983)). Defendant argues that he declined to assist with the translation and was subjected to numerous requests and pleas to induce sympathy by the agent. With regard to the nature of the inducement, Defendant argues that the agent provided all the means necessary to commit the offense, namely the English translation with time-stamps from the video and the Arabic transcript of the video. He contends that without the undercover agent's appeals and inducement, he "would not have thought about committing the alleged crime" and, thus, was entrapped as a matter of law [Doc. 64 p.17]. The Government counters that the undercover agent's actions (two requests for Defendant to assist with the translation within a six-day period and a third comment after the fact) do not rise to a level of pressure that would permit the Court to find entrapment as a matter of law.

As stated above, inducement goes beyond simply affording the opportunity to commit a crime and typically requires "excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *Dixon*, 396 F. App'x at 186. The Government cites to three cases illustrating entrapment as a matter of law, in each of which, the government exploited the defendant's non-criminal motives over an extended

31

time period to persuade the defendant to commit the offense. *Jacobson*, 503 U.S. at 552–53 (finding entrapment when government "exerted substantial pressure" on defendant to order child pornography by mailing solicitations to stand against censorship over twenty-six months); *Sherman v. United States*, 356 U.S. 369, 371–73 (1958) (finding entrapment where government agent, posing as a fellow drug addict at a treatment facility, repeatedly asked defendant for help getting drugs over multiple months); *McLernon*, 746 F.2d at 1113–14 (finding entrapment when agent, who posed as defendant's close friend for eight years, persuaded defendant to engage in a drug deal in order to save the agent from being killed by "the mob").

According to Defendant's Statement of Facts, he met the undercover agent online in mid-2019 and added the agent to his private chat group in December 2019 [Doc. 64 p. 8]. Defendant asserts that in October 2019, he declined the agent's inquiry of whether he would work as a translator for an ISIS media group [Doc. 64 p. 8–9]. Defendant contends that during the time he knew the agent, the agent would perform "favors" for Defendant such as assisting with videos by Defendant's publishing house, making "channels" on the online messaging platform, and "providing news links" [Doc. 64 p. 9]. Defendant states that on January 30, 2021, after performing some recent favors, the agent asked if Defendant would be willing to help with translating a video, and Defendant declined [Doc. 64 pp. 9-10]. On February 1, 2021, the agent asked if Defendant could assist with editing the translation, which was halfway complete, and Defendant agreed to "look at it" [Doc. 64 p. 11]. On February 2, Defendant agreed to the agent's request to send the partial translation; on February 5, he ignored the agent's request to transfer the mostly completed translation to him; on February 7, Defendant agreed to get back to the agent on the competed translation; on February 10, Defendant told the agent he had sent the translation to someone else but the agent said he only wanted Defendant; on February 11, Defendant updated the agent on his

translator's progress; on February 13, Defendant told the agent the translation was completed with the exception of a little editing; and, on February 14, Defendant sent the edited translation to the agent [Doc. 64 p. 10–11]. On three occasions, the agent appealed to Defendant's sympathy, by stating the agent did not want to disappoint the "diwan" [Doc. 64 pp. 10–11].

The Court finds that even using Defendant's factual account, the agent's solicitations to assist with a translation occurred over a short period of time (approximately two weeks). Whether the agent appealed to a non-criminal motive (the agent's relationship with Defendant) as alleged by Defendant or a criminal one (the Defendant's desire to help ISIS spread its message) as alleged by the Government, the "pressure" on Defendant to return a favor for the agent does not rise to the level of that described in the cases cited by the Government above.

Finally, the Court considers whether Defendant engaged in "any similar criminal activity" either before or after the alleged offense. Defendant asserts that he never worked for ISIS as a translator and that his prior translation of ISIS releases and materials was lawful. However, Defendant also insists that the alleged illegal conduct is similar to the "lawful" activity he engaged in for years [Doc. 59 p. 9]. Thus, this factor does not support a finding of entrapment.

Considering the factors as a whole, the facts even as alleged by Defendant, do not permit the Court to find that absence of Defendant's predisposition to commit material support is "patently clear." Based on this and the presence of disputed facts, Defendant's motion for dismissal of the charge based on entrapment must be denied.

## IV. CONCLUSION

For the reasons set forth above, the Court finds Defendant has failed to raise a valid constitutional challenge to the Indictment. The Court also finds the facts relating to an entrapment defense are disputed and, even as alleged by Defendant, do not support a finding of entrapment as

a matter of law. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant

Carpenter's motions to dismiss the Superseding Indictment [Docs. 40, 58, & 63] be denied.[10]

Respectfully submitted,

*Debra C. Poplin*

Debra C. Poplin
United States Magistrate Judge

---

[10] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).