UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:21-CR-38-KAC-DCP |
| ) | |
| BENJAMIN ALAN CARPENTER, ) | |
| ) | |
| Defendant. ) | |

## ORDER ACCEPTING REPORT AND RECOMMENDATION

This criminal case is before the Court for consideration of the Report and Recommendation ("Report") issued by United States Magistrate Debra C. Poplin [Doc. 88], recommending that the Court deny Defendant Benjamin Alan Carpenter's pro se motions to dismiss the Indictment and supplemental motion to dismiss the Superseding Indictment [Docs. 40; 58; 63; 80]. Judge Poplin held a hearing on the motions, [*see* Doc. 71], and issued the Report, [Doc. 88], recommending that the Court (1) deny Defendant's motions to dismiss the Superseding Indictment because it "provides sufficient notice of the charged offense" and "is neither vague nor overly broad as applied," [*id.* at 1-2], and (2) deny Defendant's motion "to dismiss the charge" due to entrapment, [*id.* at 26], because "the facts relating to an entrapment defense are disputed" and "do not support a finding of entrapment as a matter of law," [*id.* at 33-34]. Defendant objected to the Report's recommendations [*See* Doc. 89]. For the reasons set forth below, the Court **ACCEPTS** the relevant portions of the Report [Doc. 88], **OVERRULES** Defendant's objections [Doc. 89], and **DENIES** Defendant's motions to dismiss [Docs. 40; 58; 63; 80].

I.      Background

On March 23, 2021, the Grand Jury charged Defendant with "knowingly attempt[ing] to provide 'material support and resources,'" "including, among other things, services," "to a foreign terrorist organization, to wit, the Islamic State of Iraq and al-Sham ('ISIS')," "knowing that ISIS was a designated foreign terrorist organization" "that engages and has engaged in terrorist activity" and "terrorism" from on or about January 30, 2021 to on or about February 14, 2021, in violation of 18 U.S.C. § 2339B(a)(1) [Doc. 3]. On August 11, 2021, the Court held a hearing and concluded that Defendant knowingly and voluntarily waived his right to counsel [Docs. 37; 38 at 2-3]. The Court permitted Defendant to represent himself with the assistance of elbow counsel [Doc. 38 at 3-5].

Defendant filed several pro se motions to dismiss the Indictment. ***First***, Defendant moved the Court to dismiss the Indictment under Federal Rule of Criminal Procedure 7 because the Indictment allegedly "fails to clearly inform [him] of the conduct which is the subject to the accusation" rendering it unclear as to "what 'services,' 'among other things,' the grand jury considered or what the Defendant is supposed to defend against" [Doc. 40 at 1, 4]. ***Second***, Defendant moved the Court to dismiss the Indictment "for being unconstitutionally and impermissibly vague and overbroad" as applied to him [Docs. 58 at 1; 59]. Defendant asserted that the Indictment "fails to provide sufficient clarity to put him on notice the alleged activity is criminal and prevent the opportunity of arbitrary and subjective enforcement" [Doc. 59 at 18]. Defendant further asserted that the Indictment "swe[eps] indiscriminately" and "abridge[s] [his] rights guaranteed under the First Amendment" because his alleged conduct "does not facilitate terrorist attacks, or make them any more likely" so that "the governmental interest is not

implicated" [*Id.* at 23-24].  **Third**, Defendant moved to dismiss the Indictment "due to entrapment as a matter of law" because "the government created and solicited the commission of an alleged crime" "from a law-abiding citizen who was not predisposed" to commit a crime [Docs. 63; 64 at 1].  The Court held a hearing on the motions on March 31, 2022 [Doc. 71].

On April 6, 2022, the United States filed a Superseding Indictment [Doc. 73].  The Superseding Indictment charges Defendant with "knowingly attempt[ing] to provide material support and resources," "***namely, services, to wit, translation services***" "to a foreign terrorist organization, that is, the Islamic State of Iraq and al-Sham ('ISIS')," from on or about January 30, 2021 to on or about February 14, 2021, "knowing that ISIS was a designated foreign terrorist organization" "that engages and has engaged in terrorist activity" and "terrorism," in violation of 18 U.S.C. § 2339B(a)(1) [Doc. 73 (emphasis added)].  The Court permitted supplemental briefing based on the Superseding Indictment [Docs. 76; 78].  Defendant thereafter moved to dismiss the Superseding Indictment consistent with his previous arguments, asserting that the Superseding Indictment "fails to solve the problems in the original" [Doc. 80 at 1, 4].  Defendant "rel[ied] on his previous filing as to overbreadth and entrapment," but added that the Superseding Indictment fails to "mention[] which specific service, mentioned in the statute, the Defendant is accused of violating," which purportedly "is a fatal flaw" [*Id.* at 1-2, 4].  Based on the initial briefing, hearing, and supplemental briefing [*see* Docs. 40; 43; 45; 58-59; 63-64; 68-71; 80-83], Judge Poplin issued the Report [Doc. 88], to which Defendant objected [Doc. 89; *see also* Doc. 90 (United States's response to Defendant's objections)].

3

## II. Analysis

### A. Legal Standard

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If a timely objection is made under Section 636(b)(1)(C) and that objection is not "frivolous, conclusive[,] or general," *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam), "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which [the] objection is made," 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3) ("district judge must consider de novo any objection to the magistrate judge's recommendation"). However, the Court need not engage in de novo review of undisputed portions of the Report. *See Mira*, 806 F.2d at 637.

### B. The Superseding Indictment Provides Notice and States an Offense.

Defendant filed a specific objection seeking de novo review of the Report's "conclusion that the superseding indictment provides constitutionally adequate notice" and "properly states the offense" under Federal Rule of Criminal Procedure 7(c)(1) [Doc. 89 at 1, 3-4]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3). Defendant specifically questioned "whether by listing 'translation services[,]'" as a specific "service," as opposed to "'personnel' or 'expert advice or assistance[,]'" the Superseding Indictment satisfies notice requirements [Doc. 89 at 3].

The Fifth Amendment to the Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury . . . nor shall any person be subject for the same offense to be twice put in jeopardy of

4

life or limb." U.S. Const. amend. V. The Sixth Amendment also provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Consistent with these constitutional requirements, Federal Rule of Criminal Procedure 7 provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1); *see also Russell v. United States*, 369 U.S. 749, 765-66 (1962) (discussing the promulgation of Rule 7 in relation to the Fifth and Sixth Amendments). "[A]n indictment is sufficient if it, ***first***, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, ***second***, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (emphasis added). To do so, the indictment must provide "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888). "An indictment is to be construed liberally in favor of its sufficiency." *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019).

The Superseding Indictment satisfies both the Constitution and Rule 7. Section 2339B(a)(1) prohibits knowingly attempting to "provide[] material support or resources to a foreign terrorist organization" where the defendant "ha[s] knowledge that the organization is a designated organization," "that the organization has engaged or engages in terrorist activity . . . or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). "[M]aterial support or resources" is defined as "any property, tangible or intangible, or service,

5

including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." 18 U.S.C. § 2339A(b)(1). The Superseding Indictment contains each of the elements of the offense charged. *Compare* 18 U.S.C. § 2339B(a)(1), *with* Doc. 73 at 1. And it details a fifteen-day (15-day) period during which Defendant allegedly committed the crime, protecting him from double jeopardy. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) ("[T]he time-and-date specification in respondent's indictment provided ample protection against the risk of multiple prosecutions for the same crime.").

Moreover, the Superseding Indictment also specifies "the essential facts constituting the offense charged." *See Hess*, 124 U.S. at 487; Fed. R. Crim. P. 7(c)(1). It identifies that Defendant allegedly attempted to provide "services" to ISIS, and it further identifies those "services" as "translation services" [Doc. 73 at 1]. These facts notify Defendant of the specific conduct at issue and inform him that the Grand Jury was presented with and considered his alleged attempt to provide translation services. *Compare United States v. Mohammad*, No. 15-CR-358, 2017 WL 2021255, at *7-8 (N.D. Ohio May 11, 2017) (indictment listing "material support and resources" "to wit: property and services, including currency and monetary instruments, tangible property, services, and expert advice and assistance" held sufficient), *with United States v. Awan*, 459 F. Supp. 2d 167, 173-77 (E.D.N.Y. 2006) (indictment listing "material support and resources" "without specifying which of a variety of activities" held insufficient).

6

In his objection to the Report, Defendant argued, for the first time, that the Superseding Indictment's use of "translation services" is insufficient because "translation services" is not "similar to the examples" of "service" listed in Section 2339A(b)(1) and that for "conduct other than that specifically listed in the statute" to be unlawful, that conduct "had to be obviously prohibited" [*See* Doc. 89 at 4 ("When general words are used with specific examples, the general words (like 'services') are to be interpreted in line with the specific examples.")]. While the Court does not typically recognize new arguments raised in an objection, the text of Section 2339A(b)(1) and Supreme Court precedent foreclose Defendant's argument. The statute's text— "any" before "service" and "including" before defining examples—indicates that "material support" is broader than those particular examples listed following "including" in the text. *See* 18 U.S.C. § 2339A(b)(1). The Supreme Court has recognized as much, defining "service" to include "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-25 (2010). "Translation services" fits comfortably within the category of "any" "service" "performed in coordination with, or at the direction of, a foreign terrorist organization." *See* 18 U.S.C. § 2339A(b)(1); *Humanitarian Law Project*, 561 U.S. at 23-25. The statutory canon of construction *ejusderm generis*, to which Defendant refers, does not change that result. Under that canon, "[w]here general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding words." *Yates v. United States*, 574 U.S. 528, 545 (2015) (second alteration in original) (applying *ejusdem generis* to criminal statutes). "Translation services" are generally of a like

7

kind to the list of non-exhaustive statutory examples of a "service" and are specifically of a like kind to "personnel" and "expert advice or assistance." *See id.* at 545-47.

Accordingly, because the Superseding Indictment provides Defendant with the notice required under the Constitution and Federal Rules of Criminal Procedure, the Court **OVERRULES** Defendant's objection [*see* Doc. 89], **ACCEPTS** the relevant portion of the Report [Doc. 88 at 3-8], and **DENIES** Defendant's "Motion for Dismissal on the Grounds the Indictment is Insufficient" [Doc. 40], as clarified by Defendant's "Supplemental Motion to Dismiss on Grounds the Superseding Indictment is Insufficient, Vague and Overbroad as Applied, and for Entrapment" [Doc. 80].

### C. 18 U.S.C. § 2339B Is Neither Vague nor Overbroad as Applied to Defendant.

Defendant sought de novo review of the Report's recommendation that the Court deny Defendant's "Motion to Dismiss the One-Count Indictment Founded on the Void-for-Vagueness and Overbreadth Doctrines" [Docs. 58; 59[1] (Memorandum in Support)] as clarified by Defendant's "Supplemental Motion to Dismiss on Grounds the Superseding Indictment is Insufficient, Vague and Overbroad as Applied, and for Entrapment" [Doc. 80]. The Report concluded that "the statute is neither vague, nor overly broad as applied to Defendant" [Doc. 88 at 1-2, 33-34]. Defendant objected, asserting that the statute does not "satisf[y] the constitutional standards regarding vagueness and overbreadth when charging translation as the alleged 'services'" [Doc. 89 at 1]. The Court addresses each of the constitutional challenges in turn.

---

[1] Defendant's Motion and Memorandum in Support specifically challenged the initial Indictment's failure to clarify whether the "material support or resources" that Defendant allegedly attempted to provide constituted "personnel," [Doc. 59 at 6-9], or "expert advice or assistance," [*id.* at 12-13]. Because the Superseding Indictment clarified that the United States charged Defendant with attempting to provide "services," specifically, "translation services," the Court need not address this portion of Defendant's Motion [*See* Doc. 73 at 1].

8

### 1. Section 2339B Provided Defendant with Fair Notice.

The Report recommended that the Court deny Defendant's motions with respect to vagueness because "the statute's requirement that the 'service' be a coordinated activity puts the 'person of ordinary intelligence' on notice that translating materials at the direction of or in coordination with a foreign terrorist organization constitutes material support" [Doc. 88 at 15]. Defendant objected to this conclusion [*See* Doc. 89 at 1]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3).[2]

In his motions, [*see generally* Docs. 58; 80], and objection to the Report, [*see* Doc. 89 at 5], Defendant specifically argued that Section 2339B, as applied to him, did not provide notice that "editing a translation for and at the request of an individual with an alleged connection with a designated terrorist organization" would be "material support" [*See id.* at 10 ("[E]diting a single translation is impermissibly vague vis-à-vis being 'material support'" and "the amount of coordination alleged between the Defendant and ISIS is impermissibly vague")]. Defendant also argued that the statute did not "prevent the opportunity of arbitrary and subjective enforcement" [*Id.* at 18].

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "A conviction fails to comport with due process if the statute under which it is obtained fails to

---

[2] Defendant also specifically objected to the Report's comment in a footnote that "how much direction or coordination is necessary to constitute a 'service'" "is a jury question" because relevant precedent has not "address[ed] the resolution of the more difficult cases that may arise under the statute in the future" [Doc. 89 at 1, 5 (citing Doc. 88 at 19 n.8)]. The Court declines to address this footnote of the Report because resolution of the footnote is not necessary to the Court's determination that the Superseding Indictment is not unconstitutionally vague as applied to Defendant's alleged conduct here. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3).

9

provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also United States v. Bazazpour*, 690 F.3d 796, 800 (6th Cir. 2012). Laws implicating First Amendment rights are held to "a more stringent vagueness test," *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), but "perfect clarity and precise guidance have never been required," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Where a defendant's own conduct "falls within the ambit" of the proscribed conduct in the statute, an as-applied vagueness challenge fails. *See United States v. Farah*, 766 F.3d 599, 614 (6th Cir. 2014).

The Court examines the statutory text to examine whether the statute provides "fair notice." *See Schickel v. Dilger*, 925 F.3d 858, 878 (6th Cir. 2019). Section 2339B prohibits "***knowingly*** provid[ing] material support or resources ***to*** a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so." 18 U.S.C. § 2339B(a)(1) (emphasis added). A defendant "***must have knowledge***" (1) "that the organization is a designated terrorist organization," (2) "that the organization has engaged or engages in terrorist activity," or (3) "that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1) (emphasis added). "[T]he knowledge requirement[s] of the statute . . . reduce[s] any potential for vagueness." *Humanitarian Law Project*, 561 U.S. at 21.

Section 2339B also defines "material support or resources." *See* 18 U.S.C. § 2339B(g)(4) ("[T]he term 'material support or resources' has the same meaning given that term in section 2339A."). As discussed previously, "'material support or resources' means ***any*** property, tangible or intangible, or service, including currency or monetary instruments or

10

financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." 18 U.S.C. § 2339A(b)(1) (emphasis added). A "service" is just one type of "material support or resources." *See* 18 U.S.C. §§ 2339B; 2339A(b)(1); *Humanitarian Law Project*, 561 U.S. at 23-24; *United States v. Hendricks*, 950 F.3d 348, 350 (6th Cir. 2020).[3]

The "ordinary meaning" of "service" "refers to concerted activity, not independent advocacy." *Humanitarian Law Project*, 561 U.S. at 23-24. In prohibiting attempting to provide "material support or resources *to* a foreign terrorist organization," Congress "indicate[d] a connection between the service and the foreign group." *Id.* at 24. The Supreme Court noted that "a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause." *Id.*; *see also* 18 U.S.C. § 2339B(h) ("Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objections shall not be considered to be working under the foreign terrorist organization's direction and control."). So too "a person of ordinary intelligence

---

[3] Defendant argued that attempting to provide one translation of a video is not "material" [*See* Doc. 59 at 17-18]. But the statute does not contain any "de minimis exception" for "material." *See United States v. Hashmi*, No. 06 Crim. 442, 2009 WL 4042841, at *7 (S.D.N.Y. Nov. 18, 2009) (rejecting defendant's attempt "to create a de minimis exception for material that he deems without 'readily apparent dangerous, nefarious, or terroristic quality'"); *see also Humanitarian Law Project*, 561 U.S. at 29-30 ("Congress expressly prohibited so much more than monetary support in § 2339B . . . *any* form of material support furnished 'to' a foreign terrorist organization should be barred." (emphasis added)). Congress defined "material support or resources" to include "any" "service[]." *See* 18 U.S.C. §§ 2339B(g)(4), 2339A(b)(1). Defendant allegedly attempted to provide a service, that is, an English translation of a video. Therefore, he has allegedly attempted to provide material support.

11

would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Humanitarian Law Project*, 561 U.S. at 24; *see also United States v. Osadzinski*, No. 19-CR-869, 2021 WL 3209671, at *2 (N.D. Ill. July 29, 2021) ("[C]reating a computer script to prevent ISIS videos from being deleted and translating ISIS videos into English for pro-ISIS media organizations . . . clearly constituted 'concerted activity.'").

Defendant's alleged conduct "falls within the ambit" of Section 2339B. *See Farah*, 766 F.3d at 614. As alleged, Defendant attempted to provide a service, that is, translation services, ***to*** ISIS [*See* Doc. 73 at 1]. In so doing, Defendant did not attempt to act independently; rather, he attempted to provide a service "in connection with, or at the direction of, a foreign terrorist organization." *See Humanitarian Law Project*, 561 U.S. at 21-24. And he allegedly attempted to do so while knowing that ISIS (1) "is a designated terrorist organization," (2) "has engaged or engages in terrorist activity," or (3) "has engaged or engages in terrorism" [Doc. 73 at 1]. *See* 18 U.S.C. § 2339B. A person of ordinary intelligence would conclude that Section 2339B proscribes attempting to knowingly provide translation services to ISIS for ISIS's benefit at ISIS's direction. *See Williams*, 553 U.S. at 304; *Osadzinski*, 2021 WL 3209671, at *2. And the statutory definitions, subsequent interpretations, and knowledge requirements prevent "untethered, subjective judgments" and provide explicit standards for enforcement. *See Humanitarian Law Project*, 516 U.S. at 21; *Williams*, 553 U.S. at 304. As applied to Defendant's alleged conduct, Section 2339B is not unconstitutionally vague.

## 2. Section 2339B Permissibly Restricts Defendant's Alleged Speech.

The Report further recommended that the Court deny Defendant's motion as to overbreadth because Defendant's alleged conduct went "beyond Defendant merely expressing an opinion on ISIS or even independently advocating for ISIS" by "provid[ing] a service in translating a video of ISIS's military campaign," which Section 2339B permissibly restricts [*Id.* at 24-26]. While "acknowledg[ing] the case law" in the Report, Defendant objected to the Report's conclusion, arguing that as applied to him, Section 2339B "prohibit[s] conduct that is protected by the First Amendment" and is therefore overbroad [*See* Doc. 89 at 5]. *See* 28 U.S.C. § 636(b)(1)(C); *Mira*, 805 F.2d at 637; Fed. R. Crim. P. 59(b)(3).

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The "overbreadth doctrine" renders a statute invalid "if it prohibits a substantial amount of protected speech . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. Section "2339B regulates speech on the basis of its content." *Humanitarian Law Project*, 561 U.S. at 27. But the Supreme Court has observed that Section 2339B "is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations." *Id.* at 10, 26. The statute neither proscribes "pure political speech" nor "[i]ndependent advocacy that might be viewed as promoting the group's legitimacy." *Id.* at 26, 31-32.

The reasoning of *Humanitarian Law Project* also applies here. Defendant allegedly attempted to provide translation services to ISIS "knowing that ISIS was a designated foreign terrorist organization," "that ISIS engages and has engaged in terrorist activity," "and that ISIS

13

engages and has engaged in terrorism" [Doc. 73 at 1]. Defendant's alleged conduct is not "pure political speech" or "independent advocacy," which may be protected under the First Amendment. *See Humanitarian Law Project*, 561 U.S. at 26, 31-32. Instead, it is communication made "under the direction of, or in coordination with [a] foreign group[]" that Defendant knew was a terrorist organization. *See id.* Defendant's alleged conduct therefore falls within the "narrow category of speech" that the statute permissibly restricts. *See United States v. Jones*, 383 F. Supp. 3d 810, 817 (N.D. Ill. 2019) (no overbreadth in applying Section 2339B to "attempt[ing] to provide supplies that ISIS could use to create explosives and personnel that ISIS could direct to accomplish its goals"); *United States v. Elshinawy*, 228 F. Supp. 3d 520, 536 (D. Md. 2016) (no overbreadth in applying Section 2339B to making "statements of support for ISIS" to members of ISIS). As the Report correctly concluded, as applied to Defendant's alleged conduct, Section 2339B does not violate the First Amendment.

Accordingly, the Court **OVERRULES** Defendant's objections, [*see* Doc. 89], **ACCEPTS** the relevant portion of the Report, [Doc. 88 at 8-26], and **DENIES** Defendant's "Motion to Dismiss the One-Count Indictment Founded on the Void-for-Vagueness and Overbreadth Doctrines," [Doc. 58], as clarified by Defendant's "Supplemental Motion to Dismiss on Grounds the Superseding Indictment is Insufficient, Vague and Overbroad as Applied, and for Entrapment," [Doc. 80].

    **D.**    **Defendant Has Not Proved Entrapment as a Matter of Law.**

Defendant also objected to and sought de novo review of the Report's recommendation that the Court deny Defendant's "Motion to Dismiss the Indictment due to the Defendant Being Entrapped as a Matter of Law" [Doc. 63]. The Report provided that "the issue of entrapment

may not be determined pretrial because it turns on disputed facts" "even as alleged by Defendant," [Doc. 88 at 1-2, 33], and recommended that the Court deny Defendant's motion, [*id.* at 33]. In his initial motion, Defendant provided a list of certain facts relevant to this case that he believed counseled "in favor of finding entrapment as a matter of law" [Docs. 64 at 2-12; 64-1 at 1-3]. The Report concluded that these facts "show[] evidence, beyond Defendant's mere translation of documents or general support of ISIS's political goals, that indicates a predisposition to provide support to ISIS" [Doc. 88 at 30]. Defendant objected to the Report's use of the specific facts he provided as evidence of predisposition, including that (1) "he was placed on a 'no-fly' list," (2) "he had discussed with the FBI whether translations would violate the law," (3) "his blog had been suspended," and (4) he "had formed an encrypted chat group" [Doc. 89 at 6]. He also objected "to the conclusion that the fact that he engaged in similar lawful activity for several years does not support a finding of entrapment" because the allegedly "lawful activity" "does not equate to similar criminal activity" in this case [*Id.*].

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). "An 'inducement' consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010). But "there is no improper inducement where the Government merely affords a person the opportunity to commit a crime." *United States v. Alfaro*, No. 14-CR-102, 2016 WL 632619, at *3 (W.D. Ky. Feb. 17, 2016). Predisposition "focuses upon whether the defendant was an 'unwary innocent' or, instead, an

15

'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63; *see also United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990) (articulating five (5) non-exhaustive factors relevant to a defendant's predisposition). "If either of these elements [of entrapment] is missing, then the . . . question is left for the jury to decide." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984).

"It is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question." *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009). Dismissal for entrapment is only appropriate where "the undisputed evidence" "demonstrate[s] a 'patently clear' absence of predisposition." *United States v. Harris*, 9 F.3d 493, 498 (6th Cir. 1993); *see also United States v. McLernon*, 746 F.2d 1098, 1111 (6th Cir. 1984) (finding "patently clear absence of predisposition" where "the government present[ed] no evidence to meet its burden of proving disposition or readiness"). "[B]ecause it requires a factual determination to decide 'whether the criminal intent originated with the defendant or with the government's agent," *United States v. Helton*, 480 F. App'x 846, 849 (6th Cir. 2012), "[t]he question of entrapment is generally one for the jury, rather than for the court," *Mathews*, 485 U.S. at 63. At the pretrial stage, the Court "may not choose between conflicting testimony or make credibility determinations." *Pennell*, 737 F.2d at 534; *see also Schaffer*, 586 F.3d at 426 (affirming district court's denial of motion to dismiss indictment for entrapment as a matter of law where the court could "not accept statements made in defendant's brief to establish entrapment as a matter of law").

Based on the facts available at this stage, law enforcement at most afforded Defendant the opportunity to commit a crime, which does not amount to improper inducement. *See Dixon*,

16

396 F. App'x at 186. Since 2017, Defendant had been "the leader of an independent Islamic translating and publishing house," Ahlut-Tawhid ("ATP"), and he "translated, edited, and published a number of ISIS Arabic releases into English" [Docs. 64 at 1, 6; 68 at 22 (United States's Response)]. In 2019, Defendant added an FBI Online Covert Employee ("OCE") to Defendant's ATP-affiliated encrypted messaging group on Telegram [Docs. 64 at 8; 68 at 8]. The OCE "portrayed himself as media savvy and as having a connection to ISIS's media department" [Doc. 64 at 8; *see also* Docs. 68 at 8 ("The FBI OCE represented to the Defendant multiple times that the OCE was a member of the 'diwan,' which refers to ISIS's centralized organization that produces and initially disseminates ISIS media content."); 70 at 6 ("[I]t's apparent the Defendant thought the FBI OCE was working under the direction and control of ISIS.")]. During 2019 and 2020, Defendant told the OCE that ISIS needed to improve its English-language translations [Doc. 64 at 8-9 (existing translations "are very rough and need editing" and "are very poor [and] need a major improvement")]. Defendant also expressed his frustration with the ISIS translations [*Id.* at 9 ("Can't look at these translations without getting annoyed" . . . "the translations are poor and have been poor/And that needs to be conveyed to whoever is doing them.")]. When asked by the OCE "if [Defendant] thought he could do better," Defendant replied that "[t]he translations of ATP are much better" [*Id.* at 9].

Over encrypted messages spanning at most sixteen (16) days, Defendant agreed to "help with editing" a translation of an ISIS video titled "Bleeding Campaigns" [Docs. 64 at 9-10; 68 at 8-10]. On January 30, 2021, the OCE "initiated a chat with the Defendant stating he was very excited because the 'diwan' spoke of a project to launch al-Hayat Media Center," [Doc. 64 at 9], "an inactive official ISIS media organization," [Doc. 68 at 8]. The OCE told Defendant that "the

17

diwan wanted to translate recent videos and release them," beginning with a video entitled "Bleeding Campaigns," which "document[ed] [ISIS's] military operations against Egyptian troops" [Doc. 64 at 9]. The OCE messaged Defendant "I don't want to ask you because you're busy and do such good work, but would you be willing to help with translation?" [*Id.* at 10]. Defendant initially responded, "[w]ith videos I can't," then "[g]uess it depends," to which the OCE commented, "[i]t's just you are the best with translations I know, and I don't want to disappoint the diwan" [*Id.*]. Two days later, the OCE "asked the Defendant if he could help with editing the translation," Defendant responded that he would "take a look at it," and the OCE commented "any help you can give with editing I really appreciate" because he did not "want to do a bad job for the diwan" [*Id.* at 11]. On February 14, 2021, Defendant sent the OCE the completed English translation of the "Bleeding Campaigns" video [*Id.* at 12]. The undercover FBI investigator gave Defendant the chance to improve an aspect of ISIS's media operations that Defendant had previously stated needed improvement. *See Alfaro*, 2016 WL 632619, at *3 (no inducement where government officials provided an "opportunity to purchase multiple kilograms of cocaine" and defendants "readily acted on that opportunity"). In doing so, and based on the undisputed facts currently presented, law enforcement did not exert "excessive pressure" to improperly induce Defendant. *See Dixon*, 396 F. App'x at 186.

Moreover, the undisputed evidence does not establish a "patently clear" absence of predisposition. The Parties agree that since 2017, Defendant has led ATP and has translated and published "pro-ISIS and official ISIS texts and media," including "ISIS reports of enemy deaths, injuries, and vehicle destructions" with "combat visuals" and "translations of editorials from ISIS's own weekly newsletter" [Docs. 64 at 6-7; 68 at 8, 22]. The Parties also agree that

18

Defendant (1) was on the no-fly-list [Docs. 64 at 4; 90 at 6], (2) spoke with the FBI before the alleged conduct in this case, [Docs. 64 at 2-5; 68 at 23], and (3) formed and used an encrypted messaging group to communicate with members of ATP [Docs. 64 at 8; 68 at 23]. Defendant initially relied on these facts to support his lack of predisposition, [*see* Doc. 64 at 2-12], but he objected to the Report's use of those same facts to support its conclusion that he was predisposed, [*see* Doc. 89 at 6]. That a factfinder may view these undisputed facts differently demonstrates that the facts do not establish a "patently clear" absence of predisposition. *See Harris*, 9 F.3d at 498; *McLernon*, 746 F.2d at 1111. Mindful of the Sixth Circuit's counsel that "the question of entrapment is generally one for the jury, rather than for the court," the drawing of inferences and conclusions from these undisputed facts is appropriately left for the jury at trial. *See Schaffer*, 586 F.3d at 426; *Pennell*, 737 F.2d at 534.

Accordingly, the Court **OVERRULES** Defendant's objections, [*see* Doc. 89], **ACCEPTS** the relevant recommendations in the Report, [Doc. 88 at 26-33], and **DENIES** Defendant's "Motion to Dismiss the Indictment due to the Defendant Being Entrapped as a Matter of Law" [Doc. 63].

### III. Conclusion

For the reasons stated above, the Court **OVERRULES** Defendant's "Objections to Report and Recommendation" [Doc. 89]; **ACCEPTS** the "Report and Recommendation" [Doc. 88]; and **DENIES** Defendant's (1) "Motion for Dismissal on the Grounds the Indictment is Insufficient" [Doc. 40], (2) "Motion to Dismiss the One-Count Indictment Founded on the Void-for-Vagueness and Overbreadth Doctrines" [Doc. 58], (3) "Motion to Dismiss the Indictment due to the Defendant Being Entrapped as a Matter of Law" [Doc. 63], and (4) "Supplemental Motion

to Dismiss on Grounds the Superseding Indictment is Insufficient, Vague and Overbroad as Applied, and for Entrapment" [Doc. 80].

    IT IS SO ORDERED.

/s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge