UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN ALAN CARPENTER<br>a/k/a "Abu Hamza" | Case No. 3:21-cr-38<br><br>Judge Crytzer<br>Magistrate Judge Poplin |

# **TRIAL BRIEF OF THE UNITED STATES**

The United States of America, through undersigned counsel, hereby respectfully submits its trial brief in the above-captioned case.

## I. STATUS OF THE CASE

*A. Status*

On March 15, 2023, a Grand Jury of the Eastern District of Tennessee returned a Second Superseding Indictment against the defendant, Benjamin Alan Carpenter, also known as "Abu Hamza." (Doc. 108). The defendant is charged with one count of attempting to provide material support to a foreign terrorist organization ("FTO"). Specifically, the Second Superseding Indictment (the "Indictment") alleges that he provided services (and more specifically, translation services) to the Islamic State of Iraq and al-Sham ("ISIS"), including its alias Al Hayat Media Center ("Al Hayat").

The defendant is in custody.

A jury trial in this matter is scheduled to begin at 9:00 a.m. on October 10, 2023. (Doc. 136).

B. *Trial Length*

The United States anticipates that it will call approximately four to six witnesses in its case-in-chief. The United States may call or recall additional witnesses, if appropriate, during presentation of rebuttal evidence.

If the defendant declines to stipulate as to some exhibits' authenticity, the United States may be required to call additional authentication witnesses (e.g., a member of the team executing a search warrant, a member of FBI's Computer Analysis Response Team, etc.). The parties are conferring in an attempt to reach consensus on exhibits' authenticity.

The United States anticipates that the presentation of its case-in-chief will take approximately three to four days. It is not immediately evident to the United States whether the defendant intends to present a defense of entrapment at trial. If he elects to do so, the presentation of the United States' case may take an additional day to two days.

C. *Attorneys*

The United States is represented in this matter by Assistant United States Attorneys Kyle J. Wilson and Casey T. Arrowood and by National Security Division Trial Attorney Charles Kovats.

The defendant is represented by Attorney Wade Davies.

## II.    CHARGES AND ELEMENTS

A. *The Charged Conduct*

The defendant is charged with a single count (i.e., Count One) of Attempting to Provide Material Support or Resources to a Foreign Terrorist Organization, in violation of 18 U.S.C. §2339B(a)(1), which provides:

**(a) Prohibited activities.--**

**(1) Unlawful conduct.**--Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

B. *Elements*

In order for the United States to prove that the defendant attempted to provide material support to ISIS, it must prove each of the following elements beyond a reasonable doubt:

*First*: The defendant knowingly attempted to provide material support or resources, namely services, to a foreign terrorist organization, specifically ISIS, including its alias Al Hayat.

*Second*: The defendant knew that ISIS was a designated foreign terrorist organization or had engaged in or was engaging in terrorist activity or terrorism.

*Third*: The defendant is a national of the United States.

3

*See, e.g.,* 18 U.S.C. § 2339B; *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-24 (2010); *United States v. Osadzinski*, Case No. 1:19-CR-869 (N.D. Ill. 2021) (Doc. 152).

Because the defendant is charged pursuant to the "attempt" provision of the statute, the United States need not show that the defendant completed the crime of providing material support to an FTO. Rather, it must prove that: (a) the defendant intended to commit the crime of providing material support to an FTO, and (b) the defendant took an action constituting a substantial step toward committing that crime. *E.g.,* Sixth Circuit Pattern Criminal Jury Instructions § 5.01 (2023) (*citing, inter alia, United States v. Alebbini*, 979 F.3d 537, 546 (6th Cir. 2020); *United States v. Wesley*, 417 F.3d 612 (6th Cir. 2005)).

C. *Offense-Specific Defined Terms*

The term "material support or resources" includes any services. The term "services" refers to concerted activity, not independent activity. Services provided as material support to a foreign terrorist organization includes activity performed in coordination with, or at the direction of, a foreign terrorist organization.[1] 18 U.S.C. §§ 2339B(g)(4); 2339A(b)(1); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-25 (2010).

---

[1] The statute defines "material support or resources" as: "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." 18 U.S.C. §§ 2339B(g)(4); 2339A(b)(1). The Court has correctly held that the list of examples within the statute's text is not exhaustive. (Doc. 104 at 7-8) (*citing Humanitarian Law Project*, 561 U.S. at 23-25).

4

The term foreign "terrorist organization" means an organization designated as a terrorist organization under section 219 of the Immigration and Nationality Act. 18 U.S.C. § 2339B(g)(6); *see* 8 U.S.C. § 1189.

The term "terrorism" means premediated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents. 18 U.S.C. § 2339B(a)(1); 22 U.S.C. § 2656f(d)(2); *see Humanitarian Law Project*, 561 U.S. at 8 n.1.

The term "terrorist activity" means, in the context of this case, any activity that, if it had been committed in the United States, would be unlawful under the laws of the United States or any state and that involves a threat, attempt, or conspiracy to use any explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with the intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property. 18 U.S.C. § 2339B(a)(1); 8 U.S.C. § 1182(a)(3)(B)(iii), (iii)(V)-(VI); *see Humanitarian Law Project*, 561 U.S. at 8 n.1 (2010).

### III. SUMMARY OF THE CASE

The defendant led and directed the operations of Ahlut Tawhid Publications ("ATP"), a worldwide internet-based organization that created, translated, and disseminated pro-ISIS and ISIS-branded propaganda into American English and other languages. In December 2020, an FBI online covert employee ("OCE") purporting to work for the ISIS media *diwan* (*i.e.*, the ISIS central media bureau) engaged the defendant about a project that was notionally very important to the media diwan: translating into English an Arabic-language ISIS propaganda video – *Bleeding Campaigns* – for ISIS and its English-language media arm, Al Hayat. The defendant, believing the FBI OCE to be an ISIS operator, agreed to provide this service to ISIS.

5

The OCE provided the defendant an incomplete English transcript of *Bleeding Campaigns*. The defendant, leveraging the assistance of ATP membership, returned a complete and corrected English transcript to the OCE. Thereafter, having previously noted that there were many more videos to be translated, the OCE provided an incomplete English transcript for the ISIS propaganda video *To Be Absolved Before Your Lord* for the defendant's review and translation.

Significantly, the defendant made multiple recommendations to the OCE that this particular video should be the next priority video for translation into English within their collaborative, multi-video translation project. The defendant explained his belief in the importance of this video to ISIS and ISIS's media propaganda effort. As was the case with *Bleeding Campaigns*, the defendant sent the partial English transcript to ATP membership for completion. Prior to its completion, however, the defendant was arrested on March 22, 2021, and the Indictment resulted.

## IV. EXHIBITS

The United States has provided defense counsel with a list of anticipated exhibits as well as the exhibits themselves, reserving the right to supplement as necessary. Though the government understands that there are outstanding issues concerning the admissibility of various exhibits, in an effort to facilitate efficient litigation, counsel are conferring in an effort to reach agreement as to exhibits' authenticity. The anticipated exhibits will be filed with the Court in accordance with its preferences and Orders.

## V. EVIDENTIARY AND OTHER TRIAL MATTERS

*Pending Motions*

The parties have raised a number of other evidentiary and trial related matters in a series of motions *in limine*. Pending motions *in limine* include: the United States' motion *in limine* concerning a defense predicated on the First Amendment (Doc. 128); the United States' motion *in limine* to take judicial notice of ISIS's designation as an FTO (Doc. 129); and the United States' motion for protective order related to the OCE's trial testimony. (Doc. 139).

Also pending before the Court is the United States' classified motion for a protective order filed pursuant to the Classified Information Procedures Act.

The defendant has filed a number of evidentiary motions, as well. Pending motions include: the defendant's motion *in limine* regarding his custodial statement (Doc. 140); the defendant's motion *in limine* to exclude certain evidence (Doc. 141); and the defendant's motion *in limine* concerning the expert testimony of Dr. Charlie Winter (Doc. 142). The defendant has also implicitly moved to exclude certain evidence in his response to the government's notice and memorandum.[2] (Docs. 127, 148).

*Transcripts of the Defendant's Post-Arrest Interview*

During the testimony of Special Agent Smith, The United States intends to introduce transcripts of the defendant's post-arrest interview. Hard-copy transcripts will be provided to the

---

[2] Though the defendant characterizes the evidence identified the United States' notice and memorandum (Doc. 127) as 404(b) evidence, the United States respectfully reiterates its position that the evidence is not within the ambit of Fed. R. Evid. 404(b). Regardless, even if it were, it would be appropriate under the terms provided by the Rule.

defendant, the Court, and each individual juror to assist them in listening to the interview. The transcript will be segmented to correspond to the clips that the government intends to play.³

"The decision to admit into evidence the transcript of taped recordings is within the discretion of the court . . . ." *United States v. Fults*, 639 F. App'x 366, 370-71 (6th Cir. 2016) (quoting *United States v. Gallagher*, 57 F. App'x 622, 625 (6th Cir. 2003)). The parties have conferred, and the United States understands that the parties are likely to stipulate as to the accuracy of the transcript. *See id.* at 371 (reiterating a preference for district courts to secure a stipulation to a transcript's accuracy). The United States will ask for an appropriate limiting instruction (i.e., that if the jury believes the transcript differs from the video, it is to rely on the video and not the transcript) at the time of the transcript's admission. *See id.*

*Summary Charts*

It is appropriate to provide summary exhibits as pedagogical devices and illustrative aids to assist the jury in understanding testimony and evidence. (*See* Doc. 147 at 9-11); *United States v. Bray*, 139 F.3d 1104, 1111 (6th Cir. 1998).

As noted in the United States' response to the defendant's motion *in limine* concerning Dr. Winter's testimony (*see* Docs. 142, 147), the government intends to introduce summary "flip charts" composed of transliterated Arabic words and phrases that are likely to appear throughout the course of the trial. As described in the government's response, jurors will almost certainly be wholly unfamiliar with the terms and concepts, and having a glossary on hand will meaningfully assist them. (*See* Doc. 147).

---

³ To the extent necessary, the United States will redact the transcript in keeping with the Court's ruling and its earlier concession to redact statements about the defendant's high school suspension and prior drug arrest.

Additionally, the use of a pedagogical reference piece will help ensure smooth and streamlined litigation. Virtually every witness the United States intends to call will either present evidence or offer testimony containing Arabic words and phrases with profound meaning to ISIS (and, the government submits, to the defendant), but that are likely entirely devoid of meaning to the jury. Rather than recurrently interrupting every witness to explain oft-used terms – or calling and recalling additional witnesses after each round of substantive testimony to explain those terms – the United States proposes that: (a) Dr. Winter be allowed to authenticate and confirm the translations appended to his disclosures, and (b) the government be permitted to introduce a physical copy of those translations as non-evidentiary exhibits for the jurors' use throughout trial.

The government will request a limiting instruction to the jury, advising it that: (a) the glossary is intended only as an illustrative aid to help them evaluate and understand evidence; (b) the glossary itself does not itself constitute evidence; (c) the glossary will not be available to the jurors in the jury room, and they will have to rely on their recollection or their own recorded notes when conducting their deliberations. The United States submits that the proposed pedagogical aid will meaningfully assist the jury and aide in the conduct of litigation, without prejudice to the defendant.

*Statements of a Co-Conspirator*

The United States intends to introduce statements of other members of ATP who were involved in the commission of this offense. For example, at one point in correspondence between the OCE and the defendant about progress on the translation of *To Be Absolved Before Your Lord*, the defendant directed the OCE to communicate directly with another ATP member

who was participating in the translation process. The government will tender into evidence transcripts of the communications between the OCE and the third party.

Statements made by the defendant's ATP comrade in furtherance of their joint venture to provide translation services to ISIS through the OCE – who was at the time a notional ISIS operator – are admissible pursuant to Fed. R. Evid. 801(d)(2)(E). Well established law holds that it is immaterial that the defendant was not charged with the conspiracy provisions of 18 U.S.C. § 2339B. *See, e.g., United States v. Blankenship*, 954 F.2d 1224, 1231 (6th Cir. 1992) ("Statements of partners in a criminal joint venture are admissible even when a conspiracy has not been charged.") (citing *United States v. Swainson*, 548 F.2d 657, 661 (6th Cir.1977)).

*The Defendant's Admissions and Pleadings*

The defendant made a number of statements in his *pro se* pleadings before this Court that the United States may wish to use. In the event the United States seeks to admit those statements, they would be appropriate as non-hearsay statements by a party opponent. *See* Fed. R. Evid. 801(d)(2). Additionally, they would be self-authenticating records requiring no extrinsic evidence of authenticity prior to admission. *See, e.g.,* Fed. R. Evid. 902(1), (4), (11).

The United States notes that the defendant would not be permitted to introduce his own out-of-court statements, whether they occurred in pleadings before the Court or in any other context. Such statements would not be offered against a party opponent and would therefore constitute impermissible hearsay. *See* Fed. R. Evid. 801(c), (d)(2); *e.g., United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010) ("[A]lthough the government was properly permitted to introduce select recordings because Henderson's parts in the conversations were

10

admissible as admissions of a party-opponent under Rule 801(d)(2), Henderson could not take advantage of this hearsay exclusion to introduce his own out-of-court statements.").

*Other Hearsay Statements*

In the defendant's pleadings, he has indicated that he may wish to raise a defense based on statements he claims were made to him by third parties, including by federal law enforcement. If such a statement's declarant is on the witness stand, the defendant may inquire about the statement. However, to the extent the defendant seeks to introduce a third party's statement for the truth of the matter asserted therein, he may not do so through others' testimony (including his own). Fed. R. Evid. 801. The United States intends to object to any such efforts.

*Entrapment*

The defendant's pleadings raise the specter of an entrapment defense. The United States is not aware of whether the defendant conclusively intends to assert this defense at trial, but if so, he is not automatically entitled to a related jury instruction.

It is long established that "[a]rtifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 442 (1932); *see United States v. Kussmaul*, 987 F.2d 345, 348 (6th Cir. 1993) (citing *Sorrells* and holding the same). And it is equally foundational that officers or employees of the government who merely afford opportunities or facilities for the commission of the offense do not constitute entrapment. *Sorrells*, 287 U.S. at 441.

In order to be entitled to an instruction on entrapment, the defendant must "present evidence of (1) government inducement of the crime, and (2) a lack of predisposition on the part

of the defendant to engage in the criminal conduct." *United States v. Sadiqullah*, 2021 WL 3043271, at *6 (6th Cir. 2021) (citing *United States v. Demmler*, 655 F.3d 451, 456 (6th Cir. 2011)); *see Mathews v. United States*, 485 U.S. 58, 62-63 (1988). To establish inducement, the defendant must introduce evidence that "law enforcement officials implanted a criminal design in the mind of an otherwise law abiding citizen." *United States v. Pennell*, 737 F.2d 521, 534 (6th Cir. 1984).

As for predisposition, the question focuses on the "defendant's state of mind before his initial exposure to government agents." *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984) (emphasis and quotation omitted). And "[o]ne is either predisposed to commit a crime before coming into contact with the government or one is not." *Id.* (emphasis and quotation omitted). Appropriate considerations include:

> the character or reputation of the defendant, including any prior criminal record; whether the suggestion of criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only be repeated Government inducements or persuasion; and the nature of the inducement or persuasion supplied by the Government.

*Demmler*, 655 F.3d at 457 (quotation omitted).

"A defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, but the defendant must provide enough evidence to support both elements of entrapment in order to receive the instruction." *United States v. Sutton*, 769 F. App'x 289, 297 (6th Cir. 2019) (quoting *Demmler*, 655 F.3d at 456-57). "A district court is justified in denying an entrapment instruction where the evidence clearly and unequivocally establishes that the defendant was predisposed [to commit the offense]." *Demmler*, 655 F.3d at 457 (quotation and alteration omitted).

12

The United States here identifies two issues for the Court. First, if the defendant does not provide sufficient evidence to support both elements of an entrapment defense, the government may oppose a corresponding instruction to the jury. Second, the United States has proposed certain self-limitations on the proof it intends to introduce. However, the assertion of an entrapment defense significantly expands the margins on appropriate areas of inquiry. In the event the defendant raises an entrapment defense, the United States submits that the aperture of its proof may expand commensurately, and the government may present additional evidence in order to address pertinent entrapment considerations and to rebut that defense.

## VI. CONCLUSION

The United States is prepared to commence trial on October 10, 2023.

Respectfully submitted this 1st day of October, 2023.

                                            FRANCIS M. HAMILTON III
                                            UNITED STATES ATTORNEY

By:    */s/Kyle J. Wilson*
         Casey T. Arrowood
         Kyle J. Wilson
         Assistant United States Attorneys
         TN BPR No. 038225
         TN BPR No. 031844
         800 Market Street, Suite 211
         Knoxville, TN 37902
         (865) 545-4167
         Casey.Arrowood2@usdoj.gov
         Kyle.Wilson@usdoj.gov

         MATTHEW G. OLSEN
         ASSISTANT ATTORNEY GENERAL

By:    */s/ Charles J. Kovats, Jr.*
         Charles J. Kovats, Jr
         Trial Attorney
         U.S. Department of Justice
         National Security Division
         950 Pennsylvania Avenue, NW
         Washington, DC 20530
         Tel: 202-616-0736
         Charles.Kovats@usdoj.gov